**CAMLOC FASTENER CORPORATION,**
Plaintiff,

v.

**OPW CORPORATION, Defendant.**

United States District Court
S. D. New York.
July 25, 1958.

John P. Chandler, New York City, for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant (Mark N. Donohue, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

Plaintiff, claiming infringement of four registrations of the trade-mark "Camloc" and unfair competition predicated on its use of that designation on its products and on alleged secondary meaning in its corporate name and abbreviations thereof, prays an injunction, accounting, treble damages, costs and counsel fees.

Jurisdiction is founded on diversity of citizenship and the requisite jurisdictional amount, and also upon the trademark laws of the United States. The Lanham Trade-Mark Act of 1946, 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127.

In substance, plaintiff alleges that defendant adopted a confusingly similar mark, "Kamlok," for use on goods of the same descriptive properties as those to which plaintiff applies its "Camloc"; that the goods sold by defendant under "Kamlok" are defective and of a cheap and inferior kind; that defendant chose "Kamlok" to enable it to palm off its product as plaintiff's; that defendant's use of "Kamlok" is likely to create confusion between defendant's and plaintiff's business and products, and the impression that defendant's products originate with, are endorsed by, or in some way are connected with plaintiff, and that defendant designed to cause such confusion and impression.

Defendant puts in issue substantially all of plaintiff's substantive allegations, admitting merely the issuance of the four registrations and defendant's use since January, 1951, of "Kamlok" on "quick coupling assemblies for connecting pipes or hose." It avers that it has not competed unfairly because it is not in competition with plaintiff and because its "Kamlok" product differs so widely and is marketed through channels so different that it could not be palmed off and is not likely to be confused with plaintiff's products, nor is it likely to create the impression that defendant's products are in any way connected with plaintiff.

The validity of three of plaintiff's trademarks is disputed as being descriptive, and the fourth as being obtained by a knowingly false, or at least incorrect, affidavit. All of the marks are claimed to be invalid on the ground of prior use as well. Infringement is denied on the ground that defendant's quick coupling assemblies differ from plaintiff's products so widely as to make it unlikely that the use of "Kamlok" in connection with them will cause confusion or deceive buyers as to their source.

Finally, defendant claims that for failure to properly claim the benefits of the 1946 Act plaintiff cannot maintain this action on registrations numbers 393936, 393937 and 414291; and as a bar to the action, as well, laches.

A counterclaim has been entered for declaratory judgment that plaintiff's marks are invalid (on the same grounds urged in defense) and that defendant has not infringed them and for an order directing the Commissioner of Patents to cancel plaintiff's marks.

Plaintiff offered testimony establishing that, together with its predecessors, it has manufactured and sold devices such as fasteners, push button latches and access doors beginning with sale of its rotatable stud fastener in 1938. It also sells and has sold, since 1938 or 1939, certain hand and machine tools for the installation, maintenance, operation and repair of these devices. The quarter-turn, or rotatable stud separable fastener, was first used with the designation "Camloc" in 1938 and as plaintiff's other products were developed and sold, on them as well—on the push button latch since about 1946; on the access doors since 1950 or 1951, and on a wire harness clamp for holding cables or hose in position, since 1957.

Of the four trademark registrations on the word or designation "Camloc," numbers 393936 and 393937, both issued on March 10, 1942, are for the rotatable stud separable fastener, the former registration coupling the word "Camloc" with a "design." Number 414291 was issued in 1945 for "Camloc," with the design, on certain specified hand and machine

tools, and 591545 was issued on June 22, 1954, on the word alone, this registration also being for rotatable stud separable fasteners and for latch fasteners as well.

Plaintiff outlined its method of sales promotion as follows: Its sales force, comprised of engineers and others with proper technical knowledge, demonstrates its products and discusses the design problems of a prospective customer with the customer's engineering or design department. The customer then draws its plans or specifications to include a particular product of plaintiff, which product is then ordered from plaintiff through the customer's or manufacturer's purchasing department. Oftentimes, also, after approval by a customer's engineering department, plaintiff's product will appear on the customer's qualified products list—after the customer is thoroughly familiar with the product and who makes it—and be drawn from this list into specifications drafted by its engineering department. Seventy-five per cent of its sales are accounted for in this way and the remaining 25 per cent through orders from people with whom plaintiff has had no previous contact such as outlined above.

Plaintiff's advertising expenditures currently approximate $30,000 to $40,000 a year and have been in similar amounts since 1952. Its sole advertising from 1943 to 1952 consisted of a series of eight advertisements that appeared in Fortune Magazine from January, 1943, to April, 1944, which largely identified the then use of its fasteners with wartime aircraft. Its net sales have steadily increased from approximately $2 million in 1951 to $4¾ million in 1957. Plaintiff also offered proof by a mechanical design engineer, author of a text and reference book dealing, in part, with practically every fastener available. He testified that in the course of assembling material he encountered various trademarks and that "Camloc" meant to him, made by Camloc Corporation, and that he felt the "Camloc" fastener, on the basis of recent discussions with "ten" people, was considered a leader in its

field. In this connection, too, an engineer from United Aircraft testified that he occasionally uses or specifies "Camloc" fasteners and that "Camloc" on a fastener means that it comes from Paramus, New Jersey, from the Camloc Corporation, and that the "Camloc" fastener is well-known in the trade and well received in his company. On cross-examination he testified that what "Camloc" meant to him was derived from his relationship with Camloc Fastener Corporation, developed in the course of his employment with United Aircraft.

Plaintiff's evidence of confusion rests largely on several letters written to it inquiring about products it did not and does not manufacture. Nothing in any of this correspondence indicates that the senders thought or believed Camloc Fastener Corporation was the manufacturer of "Kamlok" couplers, or indeed that they were even inquiring about "Kamlok" couplers. Plaintiff's president testified in connection with one letter that he did not think it referred to a product of defendant but that he thought it demonstrated confusion regardless of the product involved. A quite plausible explanation for the letters is given in the instance of one of the inquiries where it is explained, "our selection of [Camloc Fastener Corporation] as the possible manufacturer of the material mentioned in our enquiry, was just a matter of trial and error * * *."

We take it also to be the fact that plaintiff's sales, apart from its sales to the government as replacement for parts on items in government use, have largely been made to the aircraft and electrical equipment industries, and other industries where equipment is designed which requires frequent access and use of quick operating fasteners which are chosen in place of permanent fasteners such as rivets or screws.

The allegedly infringing mark, "Kamlok," has been used since June, 1951, on a product manufactured by defendant which is designated a quick connect hose coupler. Defendant has offered proof showing that at least since 1951 its pri-

mary business consists of manufacturing and selling a line of specialty valves, fittings and assemblies for the handling of hazardous liquids and dry cargo. It sells to, what it terms, the major oil companies, industry in general, government agencies and manufacturers and users of bulk handling or dry cargo equipment. Its "Kamlok" coupler is also distributed by several of the largest rubber goods manufacturers to their hose distributors. By industry in general it means to include power plants and chemical and food processing plants, and its sales here are all in connection with hazardous liquids. The primary market for its "Kamlok" couplers (as well as all its products) however, is what it terms the major oil companies. Its marketing in this connection is done with the marketing division of the particular company, which division is concerned with selling the gasoline and petroleum products after they have been delivered to the bulk plant or refinery bulk plant and before they go to fuel oil dealers and service stations. In order to sell its product to these companies defendant must have its product appear on the customer's qualified products list or have it specified in the customer's blueprints, so that the product eventually becomes part of equipment used at bulk plants and service stations. To accomplish this it works with the customer's engineering department through its own field sales engineers. Further testimony was given to the effect that before the product gets on such a list the customer conducts its own tests, and that by the time the product does appear on the list the defendant corporation is recognized as the supplier of the coupler.

With respect to the oil companies the actual sale is accomplished by means of jobbers. Sales to other than the oil companies are made through a subsidiary of defendant corporation.

Defendant's advertising of its "Kamlok" couplers consisted, for 1952–1957, in tradepaper advertisements, and in "general folder" or bulletin type advertisements, used in direct mail compaigns,

covering many of its products and directed to a specific field or use. Its typical tradepaper advertisement features the words "Kamlok quick couplers" or "Kamlok coupling assemblies" and prominently displays as well, both on pictures of its coupler and elsewhere on the page, its trademark "OPW." Furthermore, its corporate name, OPW Corporation, and address are visually significant in relation to the rest of the advertisement. Suffice it to say that its bulletins place a great deal of significance on OPW Corporation and very little on "Kamlok."

Defendant's president testified that OPW came to use the designation "Kamlok" on its couplers to distinguish this product from others manufactured by it, and that other similarly distinguishing names are used for some of its other products. Originally, the term "Kwikseal" had been used but it was dropped on advice of counsel, which was to the effect that it was already being used on products similar to defendant's coupler. He testified that the name "Kamlok" was chosen because it was descriptive and the corporation felt that such a name would aid in merchandising the coupler. He further stated that at the time the name was chosen plaintiff's word "Camloc" was not known to defendant, that it did not know of plaintiff's use until two or three days after "Kamlok" had been selected, and that it became apprised of plaintiff's use through a search made around January, 1951, by counsel, who advised them that they could, nevertheless, use "Kamlok." "Kamlok" was first used in connection with defendant's coupler in or around June, 1951. He also testified that the first notice of plaintiff's objection to defendant's use occurred in May, 1952.

Defendant's president also testified that customers and jobbers referred to defendant's couplers as "OPW Kamloks" and that he knew of no instances, after suit was filed, of inquiries being made to defendant corporation concerning plaintiff's product, although at that time he gave explicit instructions that such inquiries should be brought to his atten-

tion. Defendant also established that its registered trademark "OPW," arranged in a diamond shape, appears on each coupler assembly that carries the word "Kamlok" and has so appeared at least since defendant began using that word.

Considering the cause for infringement first, the issues may generally be stated as involving the validity of the four marks and the defendant's alleged trespass upon them. The claim of invalidity, as we have said, is based on the ground of descriptiveness with respect to numbers 393936, 393937 and 414291, a faulty affidavit concerning number 591545, and prior use with respect to all. At the outset we find that defendant has not established prior use— at the most it has shown that several firms adopted variations of the words cam and lock to describe the qualities of their goods.

Plaintiff urges that to be descriptive a mark must connote the goods to which it is applied, and that since no one seeing or hearing the word "Camloc" would have the slightest understanding of what the goods are, for which it is a trademark, it cannot be a descriptive mark. We take it that a designation can also be descriptive, and hence invalid, if it describes the characteristics or ingredients of the product to which it is applied. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 1911, 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536; Restatement, Torts § 721 (1938).

Starting from this premise we find the term "Camloc" to be descriptive and not suggestive, as plaintiff asserts, of a quite essential and primary characteristic of plaintiff's rotable stud separable fastener, viz., the principle or method by which it achieves its object of rapid fastening. The fastener may be stated generally to operate as follows: by means of turning what is known as the stud a cross pin is made to ride along a camming surface until it is finally brought to rest in a locking or locked position on notches placed along the camways. The locking effect is achieved partially through the operation of a spring which is compressed as the stud is turned to place the cross pin in the notches. As the term "cam" is defined in the dictionary it is "a curved wedge movable about an axis used for forcing or clamping two pieces together." Among the primary definitions of the word "lock" is included "a means or device for fastening or for restraining."

Moreover, applying the test approved in Douglas Laboratories Corp. v. Copper Tan, Inc., 2 Cir., 1954, 210 F.2d 453, 455, we feel that "Camloc," if it is suggestive at all, employs "'suggestion * * * so close and direct that it is apparently descriptive and generally useful in approximately that form to all merchants marketing such goods * * *.' 3 Restatement, Torts § 721, comment a (1938)." In this connection we note defendant's proof of use of variations of the words *cam* and *lock* by other manufacturers. Nor do the cases cited by plaintiff as illustrative of marks that are not descriptive persuade us that "Camloc" is not. Indeed, much thought is hardly necessary to conclude that a rotatable stud separable fastener called "Camloc" operates and achieves its purpose by a camming-locking action, W. G. Reardon Laboratories, Inc., v. B. & B. Exterminators, Inc., 4 Cir., 1934, 71 F.2d 515, 517, and what thought if any, is involved in this determination, is that, we feel, which is engendered by the shorthand or abbreviated form employed to convey meaning.

What we have said applies to plaintiff's marks numbers 393936 and 393937. It does not apply, however, to number 414291 issued in connection with certain specified hand and machine tools, as we think the mark as applied to them is clearly not descriptive.

Plaintiff's trademark number 591545 was registered under § 2(f), 60 Stat. 428 (1946), 15, 15 U.S.C.A. § 1052(f), as a mark that had become "distinctive of the applicant's goods in commerce." Defendant urges invalidity and cancellation of this registration, assertedly granted on the basis of an affidavit of five years of substantially ex-

clusive and continuous use, because of claimed defects in the affidavit. We find it unnecessary to pass upon matters raised by this claim since we determine on the proof submitted that plaintiff's mark did not and has not become distinctive of its goods as required by § 2(f). We take into account, in this respect, the fact that plaintiff's mark is descriptive, that quite similar designations have been used by others in describing their products, and that the direct and circumstantial proof offered to establish distinctiveness, or secondary meaning, fell short of its objective. We feel this more than sufficient to outweigh the, at most, prima facie effect ("The commissioner *may* accept, as prima facie evidence * * *" [emphasis added]) that the aforementioned affidavit would have. Cf. Minnesota Mining & Mfg. Co. v. Minnesota Linseed Oil Paint Co., 1956, 229 F.2d 448, 457, 43 C.C.P.A., Patents, 746, 757.

Having decided that plaintiff is entitled to protection only on its registered trademark number 414291, we proceed to the question of infringement. We might say in passing, however, that our conclusion on this issue would be the same even were plaintiff's mark, registration number 591545, considered valid.

■ Dispositive of this issue is our determination that defendant's use is not "likely to cause confusion or mistake or to deceive purchasers as to the source of origin * * *" of plaintiff's goods, 60 Stat. 437 (1946), 15 U.S.C.A. § 1114 (1) (a).

In arriving at this conclusion we consider that plaintiff's hand and machine tools are notably different from defendant's couplers. (Even plaintiff's rotatable stud fastener differs in many respects from the couplers. The former serves to fasten to plane-like surfaces while the latter functions to join two tubular structures. That fasteners and couplers are considered apart is evidenced by the fact that the text hereinbefore mentioned, purporting to be a complete coverage of known and available fasteners, omits reference to coupling devices. Furthermore, an officer of plain-

tiff corporation testified that the trade refers to plaintiff's rotatable stud fastener as a fastener and not a coupler). This difference precludes confusion of product and detracts from the possibility of confusion of source, and in the latter connection, when it is considered that the vast majority of purchasers of both plaintiff's and defendant's products are unquestionably careful and scrutinizing, cf. Societe Anonyme v. Julius Wile Sons & Co., D.C. S.D.N.Y.1958, 161 F.Supp. 545, 547–548, and that the method by which most sales of both parties are effected causes familiarization of the purchaser as to who is the manufacturer, we think the conclusion of little, if any, likelihood of confusion as to source is amply buttressed. We are further persuaded to this conclusion by the prominent display of defendant's "OPW" trademark both on its product and in its advertising, and the appearance of "CIN.O." on its products as indicative of defendant's location.

All of this convinces us that confusion as to the source of "Kamlok" couplers is not to be expected or considered likely to occur. We note here, also, plaintiff's failure to establish any instances of actual confusion.

Finally, assuming arguendo that confusion were likely, we find as a fact that plaintiff has failed to establish its claim of inferiority of defendant's goods and the possibility that plaintiff's reputation might thus be stained. See Hyde Park Clothes, Inc., v. Hyde Park Fashions, Inc., 2 Cir., 1953, 204 F.2d 223.

■ Regarding the claim for unfair competition we are of the opinion that plaintiff has not established any right to relief. Its proof has not substantiated its allegations of secondary meaning in either the mark "Camloc," or the corporate name, Camloc Fastener Corporation, or abbreviations thereof. We find also, keeping in mind that plaintiff has a valid technical mark in "Camloc" applied to its tools, that there have been no instances of palming off and that defendant did not adopt its mark "Kamlok" with intent to deceive or appropriate any advantage from the similarity of its mark and plaintiff's. We reiterate our conclusion that

**22**

there is no likelihood of confusion arising from the similarity of names which warrants relief. The absence of these elements precludes granting the relief here sought and distinguishes this case from those plaintiff has urged upon us—e. g., Tiffany & Co. v. Tiffany Productions, Inc., 1st Dept.1932, 147 Misc. 679, 264 N.Y.S. 459, affirming 237 App.Div. 801, 260 N.Y.S. 821, affirmed 1933, 262 N.Y. 482, 188 N.E. 30; Martha Washington Candies Co. v. Martha Washington Ice Cream Co., 1st Dept.1952, 280 App.Div. 256, 113 N.Y.S.2d 119, appeal dismissed 1953, 304 N.Y. 974, 110 N.E.2d 896; Albro Metal Products Corp. v. Alper, 1st Dept.1952, 281 App.Div. 68, 117 N.Y.S. 2d 342.

Since we have found for defendant on all issues excepting cancellation of registration number 414291, it is unnecessary to discuss the issues of laches and whether plaintiff was required to take any action to claim the benefits of the 1946 statute for its registrations under the 1905 statute.

This opinion is filed in lieu of findings of fact and conclusions of law.

Judgment accordingly.