**EMPRESA CUBANA DEL TABACO d.b.a. Cubatabaco, Plaintiff,**

v.

**CULBRO CORPORATION and General Cigar Co., Inc., Defendants.**

**No. 97 Civ. 8399(RWS).**

United States District Court,
S.D. New York.

March 14, 2007.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York, NY, By: Michael Krinsky, David B. Goldstein, Christopher J. Klatell, for Plaintiff.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY, By: Andrew L. Deutsch, Joshua S. Sohn, Morgan & Finnegan, L.L.P., New York, NY, By: Harry C. Marcus, Scott Greenberg, for Defendants.

## *OPINION*

SWEET, District Judge.

Defendants General Cigar Co., Inc. and General Cigar Holdings, Inc. (collectively "General Cigar") have moved under 15 U.S.C. § 1119 and the Court's ancillary jurisdiction to amend the order of May 15, 2006 (the "May 15 Order") to direct the Patent and Trademark Office's Trademark

Trial and Appeal Board (the "PTO's" and "TTAB") to dismiss the pending petition of plaintiff Empresa Cubana del Tabaco ("Cubatabaco") for cancellation of General Cigar's registrations of COHIBA and to dismiss Cubatabaco's pending application before the PTO for registration of COHIBA; or, in the alternative, to enter final judgment granting such relief.

For the reasons set forth below, the motion is denied.

### The Parties

Cubatabaco is a company organized under the laws of Cuba with its principal place of business in Havana, Cuba. Directly, and through its licensee, Habanos, S.A., Cubatabaco exports tobacco products from Cuba throughout the world, excluding the United States because of the current trade embargo. It was established by the Cuban government as an independent entity with its own assets and administration and is subject to the jurisdiction of a Cuban ministry.

Culbro has been merged into and is survived by General Cigar Holdings, Inc. General Cigar Holdings, Inc. is a Delaware corporation with its principal place of business in the county of New York. General Cigar Holdings, Inc. functions as a holding company for General Cigar Co., Inc.

General Cigar Co., Inc. is a Delaware corporation with its principal place of business in Bloomfield, Connecticut. General Cigar Co., Inc. is in the business of manufacturing, marketing, advertising, and distributing tobacco products. General Cigar Co., Inc. and its predecessors in interest have been major U.S. manufacturers and distributors of cigars for more than a century.

### Prior Proceedings

In January 1997, Cubatabaco applied to register the trademark COHIBA in the PTO and, at the same time, applied to the TTAB to cancel General Cigar's registrations. Later in 1997, General Cigar launched a COHIBA-branded cigar on a national scale. On November 12, 1997, Cubatabaco brought this action for an injunction, as well as for cancellation of General Cigar's registration. As provided for in TTAB Rule 2.117, 37 C.F.R. § 2.117, the TTAB cancellation proceedings were suspended pending the outcome of the federal court litigation. After a bench trial, General Cigar's use of COHIBA was enjoined and cancellation of General Cigar's registrations was ordered. *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399(RWS), 2004 WL 925647 (S.D.N.Y. Apr.30, 2004); *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97 Civ. 8399(RWS), 2004 WL 602295, at *20–21 (S.D.N.Y. Mar.26, 2004).

On appeal, General Cigar contended for the first time that the relief awarded by this Court violated Cuban Assets Control Regulations, 31 C.F.R. Part 515 (the "CACR"). On August 27, 2004, the Second Circuit requested that the United States submit its views. The United States submitted an *amicus curiae* brief on November 12, 2004, advising that the granted relief was compatible with the CACR even in the absence of a specific Office of Foreign Asset Control ("OFAC") license. (Klatell Decl., Aug. 22, 2006 ("Klatell Decl."), Ex. 2 at 5–6, 10.) The United States also submitted in its brief that Cubatabaco was entitled to certain of the relief on the facts found by this Court. (*Id.* at 12–13.)

The Court of Appeals determined that in the absence of a specific OFAC license, this Court's orders "would entail a transfer of property rights in the COHIBA mark to Cubatabaco in violation of the embargo." *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 471 (2d Cir.2005). The Court of Appeals did not, however,

reach the merits of this Court's decision. Cubatabaco's petition for rehearing and for rehearing *en banc* was denied on June 1, 2005.

After General Cigar raised the CACR issue on appeal, Cubatabaco filed a September 20, 2004 application with OFAC for a specific license retroactively authorizing Cubatabaco's acquisition of rights in the COHIBA trademark under the well-known marks doctrine, and retroactively authorizing this Court's issuance of relief in favor of Cubatabaco.

After the Court of Appeals' adverse decision, Cubatabaco petitioned the Supreme Court for a writ of certiorari. In response to the Court's request for its views, the United States advised the Court in a May 2006 *amicus curiae* brief that it considered the Second Circuit's decision to be in error but nonetheless urged the Supreme Court to deny review. The United States noted Cubatabaco's pending OFAC application to explain why the treaty, reciprocity, and foreign affairs concerns raised by Cubatabaco could be adequately addressed by the Executive in its discretion and thus were not reasons to grant review. The Supreme Court denied certiorari on June 15, 2006.

The Court of Appeals' mandate, issued on February 8, 2006, decreed that the district court's judgment be "AFFIRMED IN PART, REVERSED IN PART, and REMANDED in accordance with the opinion of this Court," which directed that the case be "remanded for entry of an order dismissing all remaining claims." *Empresa*, 399 F.3d at 486. The mandate was entered in the district court on February 23, 2006. Pursuant to the mandate, this Court entered an order on May 17, 2006, as instructed by the Court of Appeals, "that all remaining claims in the above-entitled action are dismissed."

On July 6, 2006, General Cigar filed the instant motion for orders dismissing Cubatabaco's petition to cancel General Cigar's registrations in the TTAB and denying Cubatabaco's application for registration of COHIBA in the PTO. The motion was heard on September 20, 2006.

### Discussion

#### 1. *The Motion is Denied as Untimely*

General Cigar has styled the instant motion as a motion to amend the May 15 Order or, in the alternative, as a motion for the entry of final judgment in this action. Since judgment has already been entered, either motion is untimely under Federal Rule of Civil Procedure 59(e). Fed.R.Civ.P. 59(e). Although General Cigar also calls for the exercise of ancillary jurisdiction, such jurisdiction is not applicable here.

#### a. *Judgment Has Been Entered*

■ The Court of Appeals issued its mandate on February 8, 2006. The mandate, labeled "JUDGMENT" at the top, was filed in the Southern District and entered on the docket by the Clerk on February 23, 2006. Additionally, an order implementing the Court of Appeals' mandate and dismissing all remaining claims in this action was signed on May 15, 2006, and entered on the docket on May 17, 2006.

Local Civil Rule 58.1 provides that:

Any order or judgment of an appellate court, when filed in the office of the clerk of the district court, shall automatically become the order or judgment of the district court ... except if such order or judgment of the appellate court requires further proceedings in the district court....

Local Civ. R. 58.1.

Entitled "Remand by an Appellate Court," Local Civil Rule 58.1 applies to situations where the Court of Appeals re-

mands for further action. If remand for dismissal, without any actual additional proceedings involving the parties, constituted remand for "further proceedings" under the rule, then it would appear that every remand would require further proceedings. The Court of Appeals' judgment did not require "further proceedings," and therefore "automatically" became the judgment of the district court when entered in the district court on February 23, 2006. Local Civ. R. 58.1.

Even if the Court of Appeals' order that this Court enter "an order dismissing all remaining claims," *Empresa*, 399 F.3d at 486, is construed as requiring "further proceedings," judgment was still entered under Local Rule 58.1. Under the local rule, if "further proceedings" are required, "an order shall be entered making the order or judgment of the appellate court the order or judgment of the district court." Local Civ. R. 58.1. Such an order, dated May 15, 2006, was entered on the docket on May 17, 2006. The May 15 Order therefore made the Court of Appeals' judgment the judgment of the district court.

Furthermore, the May 15 Order satisfies the separate document requirement for entry of judgment. Fed.R.Civ.P. 58(a)(1); *see also Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir.1993); *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir.1987). First, the May 15 Order is a document "separate from any judicial memorandum or opinion" that disposed of the issues in the case. *Axel Johnson Inc.*, 6 F.3d at 84. Second, although the May 15 Order did not bear the title "judgment" as required in *Kanematsu–Gosho, Ltd. v. M/T Messiniaki Aigli*, 805 F.2d 47, 48–49 (2d Cir.1986), it was "a one-sentence order" which the Second Circuit has described as "satisfy[ing] the separate-document requirement." *RR Village Ass'n, Inc.*, 826 F.2d at 1201.

Therefore, based on the foregoing analysis, the May 15 Order constitutes a judgment in this action.

### b. *A Post–Judgment Motion Is Untimely*

■ Although not citing to any rule of civil procedure, General Cigar has styled its motion as a motion to amend the May 15 Order, which it has been determined constitutes a judgment in this action. Therefore, the motion is controlled by Rule 59(e), Fed.R.Civ.P. According to the Court of Appeals:

> To be timely under Civil Rule 59(e), a motion must be filed within 10 days after entry of the judgment ... This time limitation is uncompromisable, for Civil Rule 6(b) provides, in pertinent part, that the district court "may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e)." Fed.R.Civ.P. 6(b).

*Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 401 (2d Cir.2000). General Cigar's motion to amend, filed on July 6, 2006, is therefore untimely whether the judgment is treated as having been entered on February 23, 2006, or May 17, 2006. *Id.* at 400–01.

■ In the alternative, relying on *Kanematsu–Gosho, Ltd.* and the absence of the label of "judgment" on the May 15 Order, General Cigar has sought to have a "final judgment" entered in this action. *See Kanematsu–Gosho, Ltd.*, 805 F.2d at 48–49. However, a "postjudgment motion requesting alteration or amendment of the judgment but denominated a motion under a Rule other than Civil Rule 59(e) is generally treated as having been made under Rule 59(e)." *Lichtenberg*, 204 F.3d at 401. Therefore, this motion in the alternative is also deemed untimely.

#### c. *Ancillary Jurisdiction Is Not Applicable*

■■■■ General Cigar has suggested that ancillary jurisdiction exists to issue an order under Section 37, Lanham Act, 15 U.S.C. § 1119. (General Cigar Mem. in Supp. 8 n. 5; General Cigar Reply Mem. 4–5.) There are only two "heads" of ancillary jurisdiction:

> (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted) (reversing improper exercise of ancillary jurisdiction).

■■■ As to the first type of ancillary jurisdiction, it does not appear to apply when, as here, the claims over which the court originally had jurisdiction have been resolved or dismissed. *Peacock v. Thomas*, 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("But once judgment was entered in the original ... suit, the ability to resolve simultaneously factually intertwined issues vanished.").

■■■ The second kind of ancillary jurisdiction, "enforcement jurisdiction," is a "creature of necessity" applied only in "extraordinary circumstances" to enforce a "valid federal judgment." *Peacock*, 516 U.S. at 360, 116 S.Ct. 862. General Cigar has urged that federal courts have ancillary jurisdiction, even after entry of judgment, to grant orders that fully effectuate the relief ordered in the judgment. (General Cigar Reply Mem. 4) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).) Specifically, General Cigar is seeking an "amend-

ment of the Court's Order of May 15" to include additional relief. (General Cigar Mem. in Supp. 1.) The Supreme Court has indicated, however, that courts do not have ancillary jurisdiction over "a request for a modification of the original decree." *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184 (1939)). If courts did have such ancillary jurisdiction, the limits of Rules 59 and 60 would not be jurisdictional.

Overall, in the view of this Court, Cubatabaco has the better of this argument. Therefore, the motion is deemed untimely. In light of the underlying issue, however, the Court will resolve the contentions of the parties, assuming *arguendo* that the motion is timely.

#### 2. *General Cigar's Motion is Precluded by the Court of Appeals' Mandate*

■■■ Cubatabaco contends that the Court of Appeals "remanded for entry of an order dismissing all remaining claims," *Empresa*, 399 F.3d at 486, including, necessarily, any counterclaims by General Cigar. General Cigar, however, now seeks the Court's consideration of claims not previously made and issuance of new remedies.

The Court of Appeals' judgment is binding upon this Court and bars the relief sought by General Cigar. *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) ("an inferior court has no power or authority to deviate from the mandate issued by an appellate court"); *In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir.1992) ("the district court has no discretion in carrying out the mandate" and its "actions on remand should not be inconsistent with either the express terms or the spirit of the mandate"). The May 15 Order responded ac-

cordingly to the Court of Appeals' February 8, 2006 mandate. Therefore, General Cigar's motion is denied on this ground as well.

### 3. *The PTO/TTAB Should Decide the Effect of the Court of Appeals' Decision on Its Proceedings*

#### a. *The Relief Sought by General Cigar Was Not Previously Requested*

 General Cigar did not previously seek a 15 U.S.C. § 1119 order dismissing Cubatabaco's suspended cancellation petition or registration petition. Section 1119 relief is generally asserted as a counterclaim in federal court litigation. *See, e.g., Avon Shoe Co. v. David Crystal, Inc.,* 279 F.2d 607, 609 (2d Cir.1960) (requesting a § 1119 order by counterclaim); *Citi Traffic Corp. v. Metro Traffic Control, Inc.,* No. CIV.A. 95–7094, 1996 WL 385645, at *1 (E.D.Pa. July 9, 1996) (same); *TRX Corp. v. Almar Commc'ns, Inc.,* No. 90 Civ. 6154(CSH), 1990 WL 186848, at *1 (S.D.N.Y. Nov.19, 1990) (same); *Camloc Fastener Corp. v. OPW Corp.,* 164 F.Supp. 15, 17 (S.D.N.Y.1958) (same). At least one appeals court has upheld denial of a motion for a § 1119 order when made after the underlying claims had already been dismissed.

In *Eagles Ltd. v. American Eagle Foundation,* 356 F.3d 724 (6th Cir.2004), after the plaintiff's case had been dismissed with prejudice, defendant moved for the first time for a § 1119 order directing that the plaintiff's suspended opposition to defendant's trademark application in the PTO be dismissed. *Id.* at 726. The Court of Appeals upheld as reasonable the district court's denial of § 1119 relief, stating that:

the prospect of dismissal of the PTO opposition was not properly before the district court because [the movant] raised the issue for the first time in its motion for reconsideration. [The movant] failed to raise the argument as a counterclaim to the infringement action. Hence, according to the procedural posture of the case and by [the movant's] own admissions, its argument for dismissal is not based on the merits but on an estoppel theory. As the district court correctly pointed out, estoppel issues are ordinarily enforced by awaiting a second action in which they are pleaded and proved by the party asserting estoppel. The PTO, not the district court, must determine the preclusive effect ...

*Id.* at 730–31.

Similarly here, dismissal of the TTAB and PTO proceedings was never requested by General Cigar in this litigation and therefore was not properly before this Court or the Court of Appeals. As a result, General Cigar, like the defendant in *Eagles, Ltd.,* is asserting an estoppel theory that is properly before the PTO/TTAB rather than this Court. *See infra.*

General Cigar contends that *Eagles, Ltd.* is distinguishable from the instant action because the marks in the district court action and in the PTO were not the same and, accordingly, the district court litigation in *Eagles, Ltd.* was not about the ability to register the mark in the PTO. In addition, General Cigar points to the fact that the district court did not reach the merits in *Eagles, Ltd.*

Because General Cigar's request for § 1119 relief was not before it, however, there are questions pertaining to the TTAB and PTO proceedings that were not decided by the Court of Appeals, making this action more similar to *Eagles, Ltd.* than General Cigar has suggested. *See infra.*

#### b. *Whether Action by the PTO/TTAB Is Barred by the Embargo Has Not Been Resolved in this Action*

 Because General Cigar did not assert the claim for relief it presents now,

the Court of Appeals only had before it the question of whether this Court's cancellation and injunction orders constituted a transaction that violated the CACR, rather than the question of whether a cancellation order by the TTAB would also violate the embargo. *See generally Empresa*, 399 F.3d 462. Additionally, the Court of Appeals did not address the registrability of the COHIBA mark by Cubatabaco; rather, it held that Cubatabaco could not acquire the mark through the famous marks doctrine. *See generally id.*

By general license, 31 C.F.R. § 515.527, the CACR authorizes Cuban nationals to obtain TTAB orders canceling third-party registrations. Section 515.527(a)(1) provides as follows:

> Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

31 C.F.R. § 515.527(a)(1).

In 1996, OFAC was asked whether, pursuant to 31 C.F.R. § 515.527, Cuba may bring a petition for cancellation of "the prior registration of a trademark related to its efforts to register a trademark." (Klatell Decl. Ex. D.) OFAC issued an affirmative ruling, stating that § 515.527 authorizes cancellation proceedings by Cuba or a Cuban national when the cancellation "relate[s] to the protection of a trademark in which Cuba or a Cuban national general license has an interest." (*Id.*) According to Cubatabaco, § 515.527 authorizes it to obtain a TTAB order canceling General Cigar's registrations, as cancellation of those registrations is related to Cubatabaco's efforts to have the PTO accept Cubatabaco's application to register COHIBA pursuant to Section 44(e) of the Lanham Act.

Further, the United States advised the Second Circuit that the general license provided by § 515.527 authorizes the cancellation relief granted by this Court: "OFAC has made clear that 31 C.F.R. § 515.527 authorizes a Cuban entity to seek the cancellation of a competing mark." (Klatell Decl. Ex. A at 6.) Section 515.527 and the 1996 OFAC ruling do not expressly reference district court orders of cancellation, however, but only TTAB cancellation orders.

The Court of Appeals, in the course of concluding that the version of § 515.527 operating at the time did not authorize Cubatabaco's acquisition of trademark rights through operation of the famous marks doctrine, observed that § 515.527 must be construed "narrowly" and that the provision relates only to the "process of registering" a mark with the PTO. *Empresa*, 399 F.3d at 475. According to Cubatabaco, the Court of Appeals decision leaves open the question whether 31 C.F.R. § 515.527 authorizes cancellation of General Cigar's registrations by the PTO as part of the process of registering COHIBA. The PTO has cited General Cigar's registrations as grounds for denying Cubatabaco's application in a "Non–Final Office Action" dated May 17, 1999. (Pl.'s Br. in Opp'n 19.) It is appropriate for Cubatabaco to argue the issue to the TTAB.

Moreover, the Court of Appeals explained its reversal of this Court's cancellation order in the following sentence:

> We also reject Cubatabaco's argument that, even if the embargo bars its acquisition of the mark, it nonetheless is entitled, based on the "fame" of its mark, to obtain cancellation of General Cigar's mark and an injunction barring General Cigar from using the mark in the United States because to grant this relief would entail a transfer of property rights in

the COHIBA mark to Cubatabaco in violation of the embargo.

*Empresa,* 399 F.3d at 471. However, even if a cancellation order would otherwise constitute a CACR-prohibited transfer, according to Cubatabaco, 31 C.F.R. § 515.527 authorizes the TTAB, even if not the district court, to make such a transfer.

Similarly, the issues raised by Cubatabaco's application to register COHIBA are different from those raised in this federal court litigation. Again, the CACR, 15 C.F.R. § 515.527, specifically allows Cuban nationals to acquire trademarks via applications to register in the PTO:

> Transactions related to the registration and renewal in the United States Patent and Trademark Office or the United States Copyright Office of patents, trademarks, and copyrights in which the Government of Cuba or a Cuban national has an interest are authorized.

31 C.F.R. § 515.527(a)(1).

Finally, the PTO and TTAB have the expertise to resolve General Cigar's claims and provide a fully adequate forum. The Sixth Circuit has held that in a procedural posture similar to this case, federal courts appropriately exercise their discretion when they leave resolution of such claims to the PTO. *Eagles, Ltd.,* 356 F.3d at 730–31; *see also infra.*

### c. *The PTO/TTAB Should Decide the Preclusive Effect of the Court of Appeals' Decision*

■ The Federal Circuit, which reviews decisions by the PTO/TTAB, has cautioned against applying a preclusive effect to federal court decisions in relation to trademark cancellation and opposition proceedings. *See, e.g., Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.,* 424 F.3d 1229 (Fed.Cir.2005) (vacating TTAB dismissal that was based on preclusive effect of district court infringement litigation); *Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360 (Fed.Cir.2000) (same); *see also Sharp Kabushiki Kaisha v. Thinksharp, Inc.,* 448 F.3d 1368, 1372 (Fed.Cir. 2006) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4475, at 473–74 (2d ed.2002); *Mayer/Berkshire Corp.,* 424 F.3d at 1234) ("An administrative tribunal has authority to establish procedures and interpretations that facilitate its statutory assignment.").

Specifically, in *Jet, Inc. v. Sewage Aeration Systems,* 223 F.3d 1360, the Federal Circuit held that a claim for trademark infringement in federal court is based on a different set of facts than a cancellation petition before the TTAB and therefore cannot have preclusive effect. *Id.* at 1363. In addition to involving different factual allegations, these different causes of action may also involve different proofs, burdens, and public policies. *Mayer/Berkshire Corp.,* 424 F.3d at 1232.[1]

As the Federal Circuit has further held:

> Caution is warranted in the application of preclusion by the PTO, for the purposes of administrative trademark procedures include protecting both the consuming public and the purveyors.... The public policy underlying the principles of preclusion, whereby potentially meritorious claims may be barred from judicial scrutiny, has led courts to hold that the circumstances for preclusion "must be certain to every intent."

---

1. Although the Federal Circuit has acknowledged that both infringement and cancellation actions may involve a "likelihood of confusion" analysis, this may only result in barring relitigation of the "likelihood of confusion" issue. It does not support preclusion of the administrative proceeding on the underlying claim. *Jet, Inc.,* 223 F.3d at 1364.

*Id.* at 1234 (quoting *Russell v. Place*, 94 U.S. (4 Otto) 606, 610, 24 L.Ed. 214 (1876)).

Accordingly, under the foregoing circumstances and assuming *arguendo* that the motion is timely, the Court's discretion is exercised to deny General Cigar's prayers for relief under § 1119.

### Conclusion

For the foregoing reasons, the motion to amend the May 15 Order, or, in the alternative, to enter judgment, is denied.

It is so ordered.