# United States Court of Appeals for the Federal Circuit

———————————

**EMPRESA CUBANA DEL TABACO,**
**(doing business as Cubatabaco)**
*Appellant,*

v.

**GENERAL CIGAR CO., INC.,**
*Appellee.*

———————————

2013-1465

———————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board, in Cancellation No. 92025859.

———————————

Decided: June 4, 2014

———————————

DAVID B. GOLDSTEIN, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., of New York, New York, argued for appellant. With him on the brief was MICHAEL KRINSKY.

ANDREW L. DEUTSCH, DLA Piper US LLP, of New York, New York, argued for appellee. With him on the brief was AIRINA RODRIGUES.

———————————

Before RADER,[*] TARANTO and HUGHES, *Circuit Judges.*

RADER, *Circuit Judge.*

Empresa Cubana Del Tabaco (d/b/a Cubatabaco) challenges the Trademark Trial and Appeal Board's grant of summary judgment to General Cigar Co., Inc. on the basis that Cubatabaco—a Cuban company—lacks standing to seek cancellation of General Cigar's two registrations for the trademark COHIBA (the Registrations). Because this court finds that Cubatabaco has a statutory cause of action to petition the Board to cancel the Registrations, and that issue and claim preclusion do not bar Cubatabaco's Amended Petition to cancel the Registrations, this court vacates the Board's decision and remands for proceedings consistent with this opinion.

I.

Both Cubatabaco and General Cigar manufacture and distribute cigars using the COHIBA mark. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 464 (2d Cir. 2005). General Cigar, a Delaware corporation, owns two trademark registrations for the COHIBA mark for use in connection with cigars. J.A. 439, 482. The first, No. 1,147,309, issued on February 17, 1981 (First Registration) and the second, No. 1,898,273, issued on June 6, 1995 for the mark in block letter format (Second Registration). *Id.*

Cubatabaco is a Cuban entity that owns the COHIBA mark in Cuba and supplies cigars bearing that mark throughout the world. *Empresa*, 399 F.3d at 464. The Cuban Assets Control Regulations, 31 C.F.R. Part 15 (CACR), prohibit Cubatabaco from selling cigars in the United States. The CACR generally prohibits a wide

---

[*]    Randall R. Rader vacated the position of Chief Judge on May 30, 2014.

range of transactions with Cuban entities, including the importation of products of Cuban origin. *See, e.g.*, 31 C.F.R. §§ 515.201, 515.204. Of note, § 515.201(b) generally prohibits a "transfer of property rights . . . to a Cuban entity by a person subject to the jurisdiction of the United States."

The CACR is subject to exceptions. A general or specific license allows Cuban entities to engage in certain otherwise prohibited transactions. *See, e.g.*, 31 C.F.R. §§ 515.527(a)(1), 515.318. The CACR itself sets forth general licenses. For instance, § 515.527(a)(1) expressly authorizes Cuban entities to engage in transactions "related to the registration and renewal" of trademarks before the U.S. Patent and Trademark Office. Specific licenses, on the other hand, must be requested from the Department of Treasury's Office of Foreign Assets Control (OFAC). 31 C.F.R. § 515.318.

Here, Cubatabaco used a general license to attempt to register the COHIBA mark in the United States. Specifically, in January of 1997, Cubatabaco filed an application to register COHIBA for cigars and related goods. J.A. 711. Operating under the general license contained in 31 C.F.R. § 515.527(a)(1), Cubatabaco based its application on its registration of the same mark in Cuba, relying on Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e). Section 44(e) allows an applicant to rely on a foreign registration to register the same mark in the United States if the applicant has a bona fide intent to use the mark in commerce, and thus does not require actual use at the time of filing. J.A. 291. Cubatabaco also filed a petition to cancel the Registrations, which the U.S. Patent and Trademark Office cited as grounds for refusing registration to Cubatabaco because its mark created a likelihood of confusion. J.A. 307–08, 707.

Cubatabaco subsequently requested a special license from OFAC to commence litigation against General Cigar

for its use of the COHIBA mark.  In October of 1997, OFAC agreed and granted Cubatabaco a special license to "initiate legal proceedings in the U.S. courts and to otherwise pursue their judicial remedies with respect to claims to the COHIBA trademark." *Empresa*, 399 F.3d at 473–74. Shortly thereafter, on November 12, 1997, Cubatabaco sued General Cigar in the U.S. District Court for the Southern District of New York alleging trademark infringement and seeking, inter alia, to enjoin General Cigar's use of the COHIBA mark in the United States and to cancel General Cigar's competing Registrations.  J.A. 486–502.  A few weeks later, Cubatabaco requested that the Board suspend the cancellation proceedings pending the outcome of the district court action.  The Board agreed and stayed the proceedings.  J.A. 19, 733–34.

In June 2002, the district court granted partial summary judgment.  *Empresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 286–87 (S.D.N.Y. 2002).  The court cancelled the First Registration, finding that General Cigar had abandoned it during five years of non-use from 1987 to late 1992. *Id.* at 267–71.

In March of 2004, after a bench trial, the district court permanently enjoined General Cigar's use of the COHIBA mark and cancelled the Registrations, finding that Cubatabaco had acquired ownership of the mark under the famous marks doctrine during the period between General Cigar's abandonment of the First Registration and the filing date of the Second Registration.  *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97-8399, 2004 WL 925647, at *2–3 (S.D.N.Y. Apr. 30, 2004). General Cigar appealed.

On appeal, the Second Circuit reversed the district court's finding of infringement and vacated cancellation of the Registrations and any injunctive relief granted by the district court. *Empresa*, 399 F.3d at 486. Specifically, the Second Circuit held that the district court could not grant

Cubatabaco the injunctive relief it sought because the remedy would involve a prohibited transfer of property under § 515.201 of the CACR, given that Cubatabaco would acquire ownership of the underlying mark. *Id.* at 474–76. The Second Circuit noted that "General Cigar has the full panel of property rights in the COHIBA mark." *Id.* at 476. The Second Circuit specifically did not address the district court's conclusion that General Cigar had abandoned the First Registration, dismissing the issue as moot. *Id.* at 472.

After the Second Circuit issued its mandate dismissing all of Cubatabaco's remaining claims, General Cigar moved the district court for orders dismissing Cubatabaco's cancellation petition before the Board as well as an order mandating denial of Cubatabaco's application for registration. *Empresa Cubana Del Tabaco v. Culbro Corp.*, 478 F. Supp. 2d 513, 517 (S.D.N.Y. 2007). The district court denied the motion as untimely. *Id.* at 517–18. In dicta, however, the district court stated that the Board should decide on its own the preclusive effect of the Second Circuit's decision, if any, leaving open the question of whether cancellation by the Board—rather than injunctive relief granted by federal courts—would constitute a prohibited transfer under the CACR. *Id.* at 521.

General Cigar appealed, and the Second Circuit affirmed denial of the motion. *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 479 (2d Cir. 2008). The Second Circuit stated that it was not an abuse of discretion for the district court "to let the agency decide . . . what preclusive effect should be given to our decision." *Id.* The Second Circuit similarly did not address the open question of whether cancellation of the Registrations by the Board would constitute a prohibited transfer under the CACR. *Id.* at 477–79.

When proceedings before the Board resumed on June 23, 2011, Cubatabaco filed its Amended Petition. J.A. 19,

22–53.  General Cigar answered and moved for summary judgment on grounds that Cubatabaco lacked standing and, moreover, that principles of issue and claim preclusion barred the Amended Petition.  J.A. 19, 238–57.  The Board agreed, granting General Cigar's motion and dismissing the Amended Petition with prejudice.  J.A. 16.  The Board expressly noted that it "need not reach the merits of the preclusion analysis" because "Cubatabaco lacked standing to pursue the matter."  J.A. 14–16.  Although the Board acknowledged that a petitioner generally has standing when a pending trademark registration application has been refused based on one or more blocking registrations, the Board still found that Cubatabaco lacked standing in light of the "binding, federal court judgment" from the Second Circuit.  J.A. 14.

In its decision, the Board cited *Stephen Slesinger, Inc. v. Disney Enters., Inc.*, 2011 WL 2489755 (TTAB June 8, 2011), and *Gal v. Israel Military Indus. of the Ministry of Def. of the State of Israel*, 1986 TTAB LEXIS 83 (TTAB June 10, 1986), for the proposition that "where a previous final judgment determines that a party does not own a property interest in a mark, the party lacks standing to challenge another's registration of the same mark." J.A. 15.  Notably, the determinations of no standing in *Slesinger* and *Gal* depended on an application of issue preclusion, whereas the Board here explicitly did not address preclusion.  J.A. 16; *Slesinger*, 2011 WL 2489755, at *8 ("Disney is entitled to summary judgment based on collateral estoppel."); *Gal*, 1986 TTAB LEXIS, at *19–20 ("In determining . . . that collateral estoppel bars Gal from asserting proprietary rights in the term 'UZI' in this action, we must conclude that Gal does not have standing . . . .").

## II.

This court reviews the Board's grant of summary judgment de novo.  *See Coach Servs., Inc. v. Triumph*

*Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012); *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1234 (Fed. Cir. 2005). The Supreme Court recently clarified that issues sometimes discussed in terms of "standing" are more appropriately viewed as interpretations of a statutory cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–88 (2014). Therefore, this opinion focuses on Cubatabaco's entitlement to the cause of action defined by 15 U.S.C. § 1064. Where entitlement turns on statutory interpretation, this court reviews the question de novo. *Id.* at 6 (applying "traditional principles of statutory interpretation" to determine whether party has a cause of action under the statute).

General Cigar does not separately deny that Cubatabaco's appeal to this court presents a case or controversy under Article III. *See id.* at 1386. We have no reason to doubt that General Cigar's Registrations adversely affect Cubatabaco's interest in its current foreign sales and potential future domestic sales should the existing prohibitions be lifted.

## III.

Because the USPTO refused Cubatabaco registration based on a likelihood of confusion with General Cigar's Registrations, Cubatabaco has a real interest in cancelling the Registrations and a reasonable belief that the Registrations blocking its application are causing it damage. Cubatabaco therefore has a cause of action under the Lanham Act to seek cancellation of the Registrations.

The Lanham Act provides a cause of action to "any person who believes that he is or will be damaged . . . by the registration of a mark" to petition the USPTO to cancel the mark. 15 U.S.C. § 1064. Contrary to the Board's finding, Cubatabaco satisfies this. Though it declined to address the preclusive effect of the Second

Circuit's decision, the Board nevertheless relied exclusively on the Second Circuit's decision to find that Cubatabaco lacks standing. J.A. 14–15. Indeed, the Board appears to have read that decision as barring Cubatabaco from ever acquiring any property interest in the mark under the CACR. This conclusion in turn would require that Cubatabaco be seen as having no legitimate commercial interest sufficient to confer standing. *Id.* But the Second Circuit specifically did *not* address whether Cubatabaco could seek cancellation of the Registrations with the Board. Rather, the Second Circuit decided only that the CACR limited the federal courts' authority to grant Cubatabaco injunctive relief because to do so would entail a prohibited transfer under the CACR. *Empresa*, 399 F.3d at 476.

The Second Circuit's finding in this regard is irrelevant to the proceeding before the Board. Before the Board, Cubatabaco enjoys affirmative authorization to seek cancellation emanating from the general license provided by the CACR. In a letter to Cubatabaco's counsel in 1996, OFAC explained that § 515.527(a)(1) authorizes Cuban entities to engage in transactions "related to the registration and renewal" of trademarks in the USPTO and "may be relied on . . . to petition to cancel a prior registration of a trademark where these actions relate to the protection of a trademark in which Cuba or a Cuban national general license has an interest." J.A. 483.

Furthermore, Cubatabaco has a legitimate commercial interest in the COHIBA mark. Indeed, that interest appears evident in the USPTO's refusal of the pending application based on a likelihood of confusion with the Registrations. A petitioner is authorized by statute to seek cancellation of a mark where it has "both a 'real interest' in the proceedings as well as a 'reasonable' basis for its belief of damage." *ShutEmDown Sports, Inc. v. Lacy*, 102 U.S.P.Q.2d 1036, 1041 (TTAB 2012) (citing *Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999)). And a pending application that has been refused registration

based on a likelihood of confusion with a registered mark is sufficient to show that the petitioner seeking to cancel the registered mark is the type of party Congress authorized under 15 U.S.C. § 1064. *Id.* (citing *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (CCPA 1982)). As explained in *Lipton*, the desire for a registration with its "attendant statutory advantages" is a "legitimate commercial interest," so to satisfy the requirements for bringing a cancellation proceeding, it is enough to show that a petitioner "filed an application and that a rejection was made because of" some existing registered mark. 670 F.2d at 1029.

General Cigar misinterprets the Second Circuit's decision to mean that the "CACR prevent[s] Cubatabaco from acquiring any property interest in the U.S. COHIBA mark at any time." Appellee Br. 19. Neither the Second Circuit decision nor the CACR prohibits Cubatabaco from registering the mark. And the CACR authorizes Cubatabaco to seek cancellation of registrations that block its application. Here, Cubatabaco bases its application on Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e), which allows a foreign registrant to rely on a foreign registration in seeking a U.S. registration for the same mark. Section 44(e) only requires that Cubatabaco have a bona fide intent to use the mark in commerce rather than requiring actual use before registration. Cubatabaco therefore has a legitimate interest in the cancellation of the Registrations that are causing Cubatabaco damage by blocking its application. Indeed, if Cubatabaco proves successful in the cancellation proceedings, Cubatabaco could obtain registration of the COHIBA mark.

Also, the Second Circuit's decision is not a per se bar to Cubatabaco's claims before the Board. The Second Circuit's decision held only that the district court could not enjoin General Cigar from use of the COHIBA mark under its interpretation of the CACR's prohibition against transfers of property. It specifically does not address

Cubatabaco's ability to seek cancellation of the Registrations before the Board, which the CACR authorizes by general license.

Thus, because Cubatabaco has sought a registration for the COHIBA mark in the United States, and the Registrations currently block its application, Cubatabaco has a statutory cause of action under the Lanham Act to seek cancellation of the Registrations before the Board.

## IV.

Although the Board declined to address preclusion in its judgment, this court finds that neither issue nor claim preclusion bars the Amended Petition. This court has recognized its authority to resolve questions of law not addressed below as long as such a ruling would not be clearly unfair to the appellee. *See Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1360 n.5 (Fed. Cir. 2013) (citing numerous authorities) (addressing an appeal from a summary judgment); *see also Delta-X Corp. v. Baker Hughes Prod. Tools*, 984 F.2d 410, 413 n.2 (Fed. Cir. 1993) (applying Fifth Circuit law). Here, it would not be clearly unfair to General Cigar to decide the questions of law concerning issue and claim preclusion in the first instance because the parties have fully briefed this issue, and because the Board and the federal court proceedings assembled an extensive record on the matter.

Issue preclusion requires four preconditions to erect a bar to relitigation: (1) identity of the issues in a prior proceeding; (2) actual litigation of those issues; (3) necessity of the prior determination to the resulting judgment; and (4) full and fair opportunities to litigate issues for the party defending against preclusion. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000)). Issue preclusion does not bar any of the grounds for which Cubatabaco seeks cancellation of the Registrations.

The Second Circuit either never addressed—or explicitly declined to reach the merits on—the issues that Cubatabaco raises in Grounds 1–3 (as to the First Registration) and 6, 9, and 10 (as to the Second Registration) of the Amended Petition.

Cubatabaco alleges in Ground 1 that General Cigar abandoned the First Registration. J.A. 49. But the Second Circuit explicitly stated it did "not decide whether the District Court properly found that General Cigar had abandoned [the First Registration] between 1987 and 1992," finding the issue moot because it had already decided to vacate the district court's order cancelling the Registrations and enjoining General Cigar from use of the COHIBA mark. *Empresa*, 399 F.3d at 462. Thus, the determination of the issue presented in Ground 1 was not necessary to the resulting judgment.

In Grounds 2 and 3, Cubatabaco asserts that General Cigar committed fraud on the USPTO in obtaining the Registrations. J.A. 49. But again, the Second Circuit did not address whether General Cigar committed fraud on the USPTO in obtaining the First Registration, a question that the district court explicitly did not reach when it found General Cigar had abandoned the First Registration. *Empresa*, 213 F. Supp. 2d at 272. And thus again, the issue was not necessary to the Second Circuit's judgment.

In Ground 6, Cubatabaco alleges that the Board should cancel the Second Registration pursuant to 15 U.S.C. § 1052 because Cubatabaco used the mark in the United States through a campaign of national advertising and promotion before General Cigar commenced use of or applied to register the mark in late 1992. Appellant Br. 45. The Second Circuit did not address this issue in its decision, nor was it necessary to the judgment.

Cubatabaco asserts in Ground 9 that under Article 6*bis* of the Paris Convention for Protection of Industrial

Property, owners of foreign marks that are well known in the United States may cancel a registration of a confusingly similar mark without requiring ownership of the mark in the United States. Appellant Br. 52. While the Second Circuit acknowledged this argument, it ultimately did not reach the merits in light of its decision that the CACR barred Cubatabaco from acquiring property rights in the mark. *Empresa*, 399 F.3d at 479–80. Thus, issue preclusion does not apply.

Cubatabaco bases Grounds 10 and 11 on the famous marks doctrine. J.A. 51–52. Yet the Second Circuit declined to address the vitality of the famous marks doctrine and its application to the dispute, because it had already decided that the CACR barred Cubatabaco from obtaining ownership of the COHIBA mark. *Empresa*, 399 F.3d at 471. Issue preclusion poses no bar to Ground 10. This court need not consider Ground 11 because Cubatabaco submits that it will not pursue this claim. Appellant Reply Br. 21.

In sum, issue preclusion does not bar Grounds 1–3, 6, 9, and 10 of the Amended Petition because, at a minimum, the issues that Cubatabaco raises therein were not addressed by, or necessary to, the Second Circuit's final judgment.

Pertinent to Grounds 4 and 8, the Second Circuit affirmed the district court's finding that General Cigar's actions did not meet the bad faith requirement under Cubatabaco's New York common law unfair competition claim. *Empresa*, 399 F.3d at 485. In Ground 4, Cubatabaco asserts that General Cigar applied for and obtained the First Registration in bad faith and for impermissible reasons, specifically for the purpose of blocking "Cubatabaco from entering the U.S. market with COHIBA-branded Cuban cigars . . . and to coerce Cubatabaco into granting distribution rights for the Cuban COHIBA." J.A. 31, 49–50. Cubatabaco alleges in Ground 8 that "General

Cigar applied for and obtained the Registration for the purpose of capitalizing on and exploiting the renown and reputation of the Cuban COHIBA in the United States." J.A. 51.

This court sees no basis for precluding Grounds 4 and 8. The issue of bad faith in the New York common law unfair competition context is not identical to the allegations of inequitable conduct made in Cubatabaco's grounds for cancellation of the Registrations under 15 U.S.C. § 1064. Furthermore, as the district court recognized in its dismissal of the state law claim, "[u]nder New York law, common law unfair competition claims closely resemble Lanham Act claims *except* insofar as the state law claim may require an additional element of bad faith or intent." *Empresa Cubana del Tabaco v. Culbro Corp.*, No. 97-cv-8399(RWS), 2004 WL 602295, at *55 (S.D.N.Y. Mar. 26, 2004) (emphasis added).

Therefore, because the bad faith determination affirmed by the Second Circuit is not identical to the issues raised in Cubatabaco's cancellation claims in Grounds 4 and 8, issue preclusion does not bar Grounds 4 and 8 of the Amended Petition.

Issue preclusion also does not apply to Grounds 5 and 7. Grounds 5 and 7 are based on Articles 7 and 8 of the General Inter American Convention for Trade Mark and Commercial Protection (IAC), which allow for a party from a contracting state like the United States and Cuba to interfere, oppose, or otherwise cancel the trademark registration of a party from another contracting state. General Cigar asserts the issues underlying these claims are firmly decided against Cubatabaco because the Second Circuit upheld the district court's dismissal of Cubatabaco's claims under Articles 7 and 8 of the IAC. *Empresa*, 399 F.3d at 482–83. In the district court litigation, Cubatabaco claimed relief under Articles 7 and 8 pursuant to Sections 44(b) and 44(h) of the Lanham Act.

*Id.* Relying on *Havana Club Holding S.A. v. Galleon S.A.*, 203 F.3d 116, 124 (2d Cir. 2000), the Second Circuit rejected that argument, holding that Cubatabaco's IAC claims were not "related to the repression of unfair competition" and therefore did not fall "within the ambit of Section 44(h)." *Empresa*, 399 F.3d at 482–83.

Here, however, Cubatabaco asserts that, unlike the federal courts, the Board can cancel registrations directly under Article 8 of the IAC, pursuant to the Board's jurisdiction under 15 U.S.C. § 1067(a). *See, e.g.*, *British-Am. Tobacco Co. v. Phillip Morris, Inc.*, 2001 WL 256142, at *2 (TTAB Feb. 27, 2001); *see also Diaz v. Servicios de Franquicia Pardo's S.A.C.*, 2007 WL 549241, at *2–3 (TTAB Feb. 16, 2007). Unlike in the district court, the Board need not consider the interplay with Section 44(h). And in any event, the Second Circuit certainly did not address whether Cubatabaco could request that the Board cancel the registrations directly under those same IAC provisions. Accordingly, issue preclusion does not bar Grounds 5 and 7 for cancellation of the Registrations.

Finally, General Cigar argues that claim preclusion should bar Cubatabaco's Amended Petition. For claim preclusion to bar relitigating a claim in a second suit, three preconditions must be met: "(1) an identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Levi Strauss*, 719 F.3d at 1372 (quoting *Jet*, 223 F.3d at 1362). Due to the "array of differences in transactional facts" between claims of infringement and cancellation, "claim preclusion cannot serve to bar a petition for cancellation based upon an earlier infringement proceeding." *Jet,* 223 F.3d at 1364.

Claim preclusion does not bar Cubatabaco's Amended Petition. The Second Circuit never issued a final judgment on the merits of Cubatabaco's cancellation claims.

Moreover, the transactional facts involved in the Second Circuit decision differ from those in the cancellation proceedings before the Board. For instance, the Second Circuit decided that under the CACR that Cubatabaco could not enjoin General Cigar from using the COHIBA mark because it would entail a prohibited transfer of property to a Cuban entity. *Empresa*, 399 F.3d at 476. In the proceedings before the Board, however, Cubatabaco need not own the mark to cancel the Registrations under 15 U.S.C. § 1064. The CACR's effect before the Board is necessarily different. Claim preclusion therefore does not bar the Amended Petition.

## V.

Cubatabaco has a cause of action under the Lanham Act to petition the Board to seek cancellation of the Registrations blocking its application for trademark registration. Further, principles of issue and claim preclusion do not bar the Amended Petition. This court therefore vacates the Board's decision and remands for further proceedings consistent with this opinion.

**VACATED AND REMANDED**