THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: March 14, 2018

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**

————

*WeaponX Performance Products Ltd.*

*v.*

*Weapon X Motorsports, Inc.*

————

Opposition No. 91221553

————

Joseph Buchbinder of The Trademark Source PL,
     for WeaponX Performance Products Ltd.

R. Christian Macke,
     for Weapon X Motorsports, Inc.

————

Before Bergsman, Shaw and Pologeorgis,
     Administrative Trademark Judges.

Opinion by Pologeorgis, Administrative Trademark Judge:

Weapon X Motorsports, Inc. ("Applicant") has applied to register the mark

WEAPON X MOTORSPORTS (in standard characters; MOTORSPORTS disclaimed)

on the Principal Register for the following goods and services:[1]

> Automotive parts for engines and motors, namely, intakes, exhausts,
> manifolds, heads, turbo chargers, superchargers and engine

---

[1] Application Serial No. 86104813, filed on October 29, 2013, based on an allegation of use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), claiming October 1, 2012 as both the date of first use and the date of first use in commerce for each of the classes of goods and services identified.

components, namely cams, pushrods, lift springs, rocker arms, retainers, guides, locks, seals, camshafts, lifters, valve springs, gaskets, cover gaskets, header gaskets, timing chains, damper seals, water pump gaskets, cam gears, gearsets, single roller gearsets, studs, head studs, ground washers, point nuts, cylinder heads, Trunnions, rocker arm trunnion kits, Billet gears, double roller timing chains, driveshafts, chromoly driveshafts, clutches, flywheels, pressure plates, slave cylinders, multi disc clutches, floaters, alignment tools, pilot bearings, differential coolers, oil coolers, pumps, filters, feed lines, banjo fittings, fill inlets, push lock fittings, thermal switches, oil temperature gauges, fuel lines, return lines, hose fittings, thermal switches, flex plates, transmission coolers, fans, oil cooling devices, lube systems, transmissions, planetary gears, planetary assemblies, billet shafts, billet converters, torque converters, turbines, bearings, fuel pumps, fuel systems, fuel injectors, check valves, methanol injection systems, pressure switches, nozzles, jets, intake valves, supercharger lid spacers, check valve Jets, Jets adapters, manifolds, port distribution manifolds, tubing, fuel tanks, fuel-cell caps, fuel tank straps, fuel tank sensors, pump fittings, fuel pressure regulators, fuel filters, fuel pressure gauges, fuel sensors, exhaust Systems, primary lines, merge collectors, connector pipes, muffler systems, exhaust tubing, and mandrel bent tubing, in International Class 7;

Automotive body kits comprising external structural parts of automobiles; automotive brakes, in International Class 12; and

Automotive body kit installation services and automobile performance conversion services, in International Class 37.

WeaponX Performance Products Ltd. ("Opposer") opposes registration of Applicant's mark on the ground of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on Opposer's asserted prior common law rights in the mark WEAPONX used in connection with automotive parts, automotive accessories, automobile engine tuning services, automobile customization services,

engineering design services, and testing of automobile engines.[2] Opposer also pleaded ownership of pending application Serial No. 86138495 for the mark WEAPONX.[3]

As an additional ground for opposition, Opposer alleges that since Applicant's business was dissolved in the state of Kentucky at the time Applicant filed its involved application, Applicant was not the proper owner of the mark as of the application filing date.[4] However, Opposer did not pursue this claim at trial or argue it in its trial brief, and it is accordingly waived. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours Inc.,* 107 USPQ2d 1750, 1753 (TTAB 2013) (petitioner's pleaded descriptiveness and geographical descriptiveness claims not argued in brief deemed waived), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014) (mem.); *Krause v. Krause Publ'ns, Inc.*, 76 USPQ2d 1904, 1906 n.2 (TTAB 2005).

Finally, Opposer asserts in its brief an unpleaded additional ground for opposition, that Applicant has abandoned its mark.[5] Opposer submitted evidence under notice of reliance relevant to the timing of Applicant's use of its mark[6] and Applicant addressed this unpleaded claim on the merits in its trial brief.[7] We thus consider the issue of abandonment tried by implied consent and the pleadings amended to conform

---

[2] Opposer's Notice of Opposition, ¶ 2, 1 TTABVUE 4-5. Citations to the record or briefs in this opinion also include citations to the publicly available documents on TTABVUE, the Board's electronic docketing system. *See, e.g., Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473 (TTAB 2014). The number preceding "TTABVUE" corresponds to the docket entry number; the number(s) following "TTABVUE" refer to the page number(s) of that particular docket entry.

[3] Opposer's Notice of Opposition, ¶ 3, 1 TTABVUE 5.

[4] *Id*. at ¶¶ 11-12, 1 TTABVUE 6.

[5] Opposer's Trial Brief, pp. 10-12, 16 TTABVUE 11-13.

[6] 13 TTABVUE 45-47, 51-53.

[7] Applicant's Trial Brief, p. 14, 17 TTABVUE 15.

to the evidence. Fed. R. Civ. P. 15(b); *UMG Recordings Inc. v. Mattel Inc.*, 100 USPQ2d 1868, 1872 n.3 (TTAB 2011) (implied consent found where nonoffering party raises no objection to introduction of evidence on the issue and was fairly apprised that the evidence was being offered in support of the issue); *Citigroup Inc. v. Capital City Bank Group, Inc.*, 94 USPQ2d 1645, 1650, 1655-56 (TTAB 2010) (Board deemed unpleaded affirmative defense of tacking by prior use of an unpleaded mark to have been tried by implied consent pursuant to Fed. R. Civ. P. 15(b)), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011).

In its answer, Applicant admitted that (1) Opposer "is the owner of Trademark Application Serial No. 86138495 ('495) for WEAPONX," (2) it filed its involved application Serial No. 86104813 on October 29, 2013, and (3) Opposer's mark WEAPONX and Applicant's mark WEAPON X MOTORSPORTS are virtually identical in appearance, sound and commercial impression.[8] Applicant, however, denied the remaining allegations in the notice of opposition.

## I.    Preliminary Issue – Evidentiary Objection

Opposer argues that because Applicant submitted its two testimony declarations as exhibits to Applicant's notice of reliance, they were improperly filed and therefore did not provide Opposer the opportunity to cross-examine the witnesses either orally or by written questions. Opposer requests that the declarations be stricken and given no consideration.[9]

---

[8] Applicant's Answer ¶¶ 3, 6, 11, p. 2, 4 TTABVUE 3.

[9] Opposer's Trial Brief, p. 7, 16 TTABVUE 8.

In response, Applicant maintains that it served its pretrial disclosures on Opposer that identified both Ben Herndon and Kurt Polter as trial witnesses, with summaries of their anticipated testimony.[10] Applicant further contends that it served Messrs. Herndon's and Polter's testimony declarations as exhibits to its notice of reliance and, therefore, Opposer upon receipt of these testimony declarations could have elected to cross-examine these witnesses but chose not to do so.[11]

Trademark Rule 2.123(a)(1), 37 C.F.R. § 2.123(a)(1), provides as follows:

> The testimony of witnesses in inter partes cases may be submitted in the form of an affidavit or a declaration pursuant to § 2.20 and in conformance with the Federal Rules of Evidence, filed during the proffering party's testimony period, subject to the right of any adverse party to elect to take and bear the expense of oral cross-examination of that witness as provided under paragraph (c) of this section if such witness is within the jurisdiction of the United States, or conduct cross-examination by written questions as provided in § 2.124 if such witness is outside the jurisdiction of the United States, and the offering party must make that witness available; or taken by deposition upon oral examination as provided by this section; or by deposition upon written questions as provided by § 2.124.

In relevant part, Trademark Rule 2.123(c), 37 C.F.R. § 2.123(c), provides that "[w]hen a party elects to take oral cross-examination of an affiant or declarant, the notice of such election must be served on the adverse party and a copy filed with the Board within 20 days from the date of service of the affidavit or declaration and completed within 30 days from the date of service of the notice of election."

Here, Applicant provided notice to Opposer, by way of its pretrial disclosures, that Messrs. Herndon and Polter would be testifying on behalf of Applicant, as well as the

---

[10] Applicant's Trial Brief, p. 12, 17 TTABVUE 13.

[11] *Id.*

5

subject matter of their anticipated testimony. Opposer does not contest receipt of Applicant's pretrial disclosures. Although the better practice would have been for Applicant to file and serve separately copies of the Messrs. Herndon and Polter testimony declarations, instead of attaching them as exhibits to its notice of reliance, Applicant's failure to do so is of no consequence.[12] Opposer was still served with copies of the testimony declarations (which Opposer does not contest) filed during Applicant's testimony period. Pursuant to Trademark Rule 2.123(c), Opposer could have elected to cross-examine these witnesses by filing and serving its notice of election to cross-examine, but it did not do so. Opposer's objection to the testimony declarations on the ground that the testimony declarations were filed and served as exhibits to Applicant's notice of reliance elevates form over substance, and is not well taken. Accordingly, Opposer's objection to Applicant's testimony declarations is overruled and its request to have them stricken is denied.

## II. The Record

The record includes the pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Applicant's application file. The record also includes the evidence summarized below. Additionally, both parties, by way of notices of reliance, submitted printouts from various websites downloaded from the Internet. Although admissible for what they show on their face, *see* Trademark Rule 2.122(e)(2), 37

---

[12] Normally, exhibits filed under a notice of reliance consist of pleaded registrations, pleaded applications, printed publications, official records, Internet materials, written disclosures of an adverse party, discovery depositions of the adverse party, and certain written discovery responses of an adverse party. *See generally* Trademark Rules 2.122(d)(2), 2.122(e)(1) and (2), 37 C.F.R. §§ 2.122(d)(2), (e)(1) and (2); and 2.120(k), 37 C.F.R. § 2.120(k).

6

C.F.R. § 2.122(e)(2), this evidence also constitutes hearsay and may not be relied upon for the truth of the matters asserted therein. Fed. R. Evid. 801(c); *Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1040 (TTAB 2010); Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 704.08(b) (June 2017) ("The probative value of Internet documents is limited. They can be used to demonstrate what the documents show on their face. However, documents obtained through the Internet may not be used to demonstrate the truth of what has been printed."). However, to the extent that a party has accepted as fact any portion of this Internet evidence submitted by the adverse party, we deem such portions of the submitted Internet evidence stipulated into the record for the truth of any matters asserted therein.

## A. Opposer's Evidence

Opposer did not submit any testimony. Opposer, however, did submit a notice of reliance on the following eleven exhibits:[13]

- Exhibit 1: a screenshot from the website www.modularfords.com that displays an online community board forum with an entry dated December 6, 2006 by WeaponX-Per that discusses new product lines for WeaponX;

- Exhibit 2: a screenshot from the website www.superstreetonline.com displaying a picture of a spark plug with the mark WEAPON X and a statement underneath the picture stating, *inter alia*, that "…WeaponX has developed an Iridium spark plug specifically for the high-performance market….";

- Exhibit 3: a screenshot from the website www.mustangforums.com that displays an online community board forum entry dated February 11, 2011 by DreamerGT that includes a picture of a box with the mark WEAPONX purportedly containing ignition coils;

- Exhibit 4: a screenshot from the website www.weaponxperformance.com

---

[13] 13 TTABVUE.

7

with the mark WEAPON X displayed on the top left corner;

- Exhibits 5, 6, and 7: screenshots from the website www.weaponxperformance.com displaying the mark WEAPON X dated February 23, 2009, November 4, 2010, and January 26, 2011, respectively, obtained from the search engine www.screenshots.com;

- Exhibit 8: a screenshot from the website www.pr.com displaying a press release dated June 14, 2008 which states, *inter alia*, "WeaponX Performance announced today that its revolutionary new spark plug is now available to consumers on its new Web site, www.weaponxperformance.com";

- Exhibit 9: a screenshot from www.whois.net displaying that the domain name www.weaponxmotorsports.com was created on August 16, 2012 and that the registrar is Godaddy.com, LLC. The owner of the domain name is not identified;

- Exhibit 10: a screenshot from www.whois.net displaying that the domain name www.weaponxperformance.com was created on November 2, 2006 and that the registrar is Tucows Domain Inc. The owner of the domain name is not identified; and

- Exhibit 11: a screenshot from the website https://app.sos.ky.gov purportedly evidencing Applicant's corporate formation documents and information.

## B. Applicant's Evidence

Applicant submitted the following testimony and evidence:

1. Testimony Declaration of Ben Herndon, Applicant's president;

2. Testimony Declaration of Kurt Polter, a purported customer of and supplier to Applicant; and

3. A notice of reliance on the following seven exhibits: [14]

- Exhibit 3: Screenshots from the website accessible at https://web.archive.org/web/20121106071511/http://weaponxmotorsports.com purportedly evidencing advertisement and promotion of automobile products, kits, packages and engineering services by Applicant under the mark

---

[14] 15 TTABVUE. Both Mr. Herndon's and Mr. Polter's testimony declarations were submitted as Exhibits 1 and 2, respectively, to Applicant's notice of reliance.

WEAPON X MOTORSPORTS;

- Exhibit 4: Screenshots from the website accessible at https://web.archive.org/web/20121212170842/http://weaponxmotorsports.com purportedly evidencing Applicant's use of the mark WEAPON X MOTORSPORTS in the marketing of performance packages to consumers interested in increasing the performance of vehicles;

- Exhibit 5: Screenshots from the website accessible at https://web.archive.org/web/20160703194244/http://weaponxmotorsports.myshopify.com purportedly evidencing Applicant's use of the mark WEAPON X MOTORSPORTS in the marketing of its products to Cadillac CTS-v, Corvette and Camaro consumers interested in increasing the performance of their vehicles;

- Exhibit 6: Screenshots from the website accessible at https://web.archive.org/web/20131003034645/http://weaponxmotorsports.com purportedly evidencing Applicant's use of the mark WEAPON X MOTORSPORTS in the marketing of its products to Cadillac CTS-v, Corvette and Camaro consumers interested in increasing the performance of their vehicles reflecting use of the WEAPON X MOTORSPORTS mark by Applicant including a narrative history of Applicant; and

- Exhibit 7: Screenshots from Applicant's purported Facebook page allegedly demonstrating successful and widespread and pervasive use of the mark WEAPON X MOTORSPORTS by Applicant in the marketing of its goods and services.

## III. Standing

Standing is a threshold issue that must be proven by the plaintiff in every *inter partes* case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1401 (2015); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) ("The facts regarding standing . . . must be affirmatively proved. Accordingly, [plaintiff] is not entitled to standing solely because of the allegations in its [pleading]."). Our primary reviewing court, the U.S. Court of Appeals for the Federal Circuit, has enunciated a liberal threshold for determining standing, namely that a

plaintiff must demonstrate that it possesses a "real interest" in a proceeding beyond that of a mere intermeddler, and "a reasonable basis for his belief of damage." *Empresa Cubana Del Tabaco,* 111 USPQ2d at 1062 (citing *Ritchie v. Simpson*, 170 F.3d 1902, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)). To prove a "real interest" in this case, Opposer must show that it has a "direct and personal stake" in the outcome herein and is more than a "mere intermeddler." *See Ritchie v. Simpson*, 50 USPQ2d at 1026; *see also Jewelers Vigilance Committee Inc. v. Ullenberg Corp.*, 853 F.2d 888, 7 USPQ2d 1628 (Fed. Cir. 1988).

In the notice of opposition, Opposer alleges its standing by pleading that it is the owner of trademark application Serial No. 86138495 for the mark WEAPONX.[15] In its trial reply brief, Opposer further maintains that it has standing to pursue this case because it was advised that the mark in its pleaded pending application will be refused registration when and if Applicant's involved application matures into a registration.[16] However, Opposer failed to submit a copy of its pleaded pending application showing the current status and title of the application or the Office Action noting the advisory refusal during its assigned testimony period. Mere allegations or arguments in support of standing are insufficient proof thereof. A plaintiff cannot rest on mere allegations in its complaint or arguments in its brief to prove standing. *Lipton Indus.*, 213 USPQ at 188. *See also Ritchie,* 50 USPQ2d at 1027.

---

[15] Opposer's Notice of Opposition, ¶ 3, 1 TTABVUE 5.

[16] Opposer's Trial Reply Brief, p. 5, 18 TTABVUE 6.

Moreover, Opposer is under the mistaken belief that its pleaded pending application is automatically of record pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b). This Rule provides that "an application against which a notice of opposition is filed . . . forms part of the record of the proceeding without any action by the parties. . .," not a plaintiff's pleaded pending application. In order for Opposer's pleaded pending application to be received in evidence and made part of the record, Opposer had to file a copy of its pleaded pending application showing the current status and title under its notice of reliance during its assigned testimony period. *See e.g., Giersch v. Scripps Networks*, 90 USPQ2d 1020, 1022 (TTAB 2009) (pending application must be properly introduced, and the fact that it was refused pending outcome of proceeding must be documented, before Board will rely upon application in determining plaintiff's standing). Alternatively, Opposer could have introduced into evidence witness testimony, in deposition or declaration form, regarding its pending application and the status thereof.

Furthermore, the printouts from the various websites submitted by Opposer with its notice of reliance show on their face that some entity is advertising products and services under the WEAPONX mark, but absent testimony from a competent witness, they are nonetheless hearsay. They do not prove that Opposer owns its pleaded WEAPONX mark or that it has offered products or services under that pleaded mark. As discussed *supra,* Opposer's Internet evidence is only probative for what it shows on its face and not the truth of what has been printed.[17] *See Couch/Braunsdorf*

---

[17] Because Applicant has not accepted as fact any portion of this Internet evidence, we do not

*Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1467 n.30 (TTAB 2014) (Internet webpage evidence admissible only to show what has been printed and not for the truth of what has been printed). In sum, Opposer has failed to submit any evidence to prove its standing.[18]

Notwithstanding the foregoing, the Board notes that Applicant, in its answer, admitted that Opposer is the owner of trademark application Serial No. 86138495 for the mark WEAPONX.[19] Additionally, in its trial brief, Applicant concedes that "[b]ecause the applicant was the senior filer, the opposer's application was suspended and the applicant's application proceeded with prosecution…."[20]

Applicant's admission and concession establishes that Opposer is the owner of application Serial No. 86138495 for the mark WEAPONX and that Opposer's application was suspended in light of Applicant's earlier-filed involved application. Therefore, Applicant's admission and concession are sufficient to demonstrate Opposer's standing to pursue this case. *Cf. Empresa Cubana Del Tabaco,* 111

---

deem it stipulated into the record for the truth of matters asserted therein.

[18] Opposer contends that Applicant's objections regarding Opposer's Internet evidence are untimely because the objections, whether procedural or substantive in nature, could have been cured if raised promptly by a motion to strike. Opposer's Trial Reply Brief, pp. 4-5, 18 TTABVUE 5-6. We note, however, that Applicant's objection to Opposer's submitted Internet evidence is not based on a request to strike such evidence on a procedural or substantive ground; instead, Applicant, while affirmatively acknowledging that such Internet materials are clearly admissible, argues that they have limited probative value to prove only that which they show on their face and they may not be used to prove any of the matters asserted therein. *See* Applicant's Trial Brief, p. 7, 17 TTABVUE 8. Accordingly, we find that Opposer's characterization of Applicant's objection is misplaced because the objection is in fact merely a recitation of the holding in *Safer*, which we apply whether there is an objection or not.

[19] Applicant's Answer, ¶ 3, 4 TTABVUE 3.

[20] Applicant's Trial Brief, p. 4, 17 TTABVUE 5.

USPQ2d at 1062 (a plaintiff may establish its standing by proving that it owns an application that was refused registration based on likelihood of confusion with the involved mark).

## IV. Likelihood of Confusion

To prevail on the ground of likelihood of confusion under Section 2(d) of the Trademark Act, based on a previously used mark, it is the Opposer's burden to prove by a preponderance of the evidence both priority of use and likelihood of confusion. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1848 (Fed. Cir. 2000); *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981); *Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1959 (TTAB 2008). Because Opposer has not pleaded and submitted any registrations, it must rely on its asserted common law rights, and is not entitled to any of the presumptions accorded to a registration by Section 7(b) of the Trademark Act. *See* Trademark Act Section 7(b), 15 U.S.C. § 1057(b); *see also Larami Corp. v. Talk to Me Programs, Inc.*, 36 USPQ2d 1840 (TTAB 1995).

### A. Priority of Use

For purposes of priority of use of its involved WEAPON X MOTORSPORTS mark, Applicant may rely on the filing date of its application, i.e., October 29, 2013. Although Applicant submitted the declarations of Messrs. Herndon and Polter to demonstrate, in part, the earliest use date of its involved WEAPON X MOTORSPORTS mark, and while Mr. Herndon's and Mr. Polter's declaration testimony indicate that Applicant first used the marks WEAPONX and WEAPONX AUTOSPORTZ as early as 1999 or 2000, neither declaration provides testimony as

to when Applicant commenced use of its involved WEAPON X MOTORSPORTS mark in commerce. Moreover, Applicant cannot rely on the Internet printouts it submitted under its notice of reliance to show the date of first use of its involved WEAPON X MOTORSPORTS mark since it has not been accepted as fact by Opposer and there is no corroborating testimony attesting to the truth of the matters contained within its Internet materials. Accordingly, since Applicant has failed to demonstrate actual use of its WEAPON X MOTORSPORTS mark for the goods and services identified in its involved application prior to the filing date of its application, Applicant may only rely on its application filing date as its constructive use date for priority purposes. *See e.g., Levi Strauss & Co., v. R. Josephs Sportswear, Inc.*, 30 USPQ2d 1328, 1332 (TTAB 1994) (an application filing date for a use-based application can establish first use of a mark).

The only evidence submitted by Opposer to demonstrate its priority of use is the Internet evidence submitted with its notice of reliance, as described above. As already mentioned, Internet evidence is only admissible for what it shows on its face, and because it does not fall within an exception to the hearsay rule, will not be considered to prove the truth of any matter stated therein. *See Couch/Braunsdorf Affinity, Inc.*, 110 USPQ2d at 1467 n.30; *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1416 (TTAB 2008) ("[S]tatements made on website might otherwise be considered hearsay").

We have carefully reviewed all of the evidence that is properly before us and conclude that Opposer has not established that it acquired ownership rights in its pleaded WEAPONX mark prior to October 29, 2013. That is, there is insufficient

evidence to conclude that the pleaded mark is being used in commerce by Opposer, or, for the purpose of establishing priority, that it was in use prior to October 29, 2013. As noted above, Opposer's evidence consists solely of Internet printouts submitted under a notice of reliance and there is no accompanying testimony attesting to the truth of the matters contained therein. For example, the Internet printouts submitted by Opposer consisting of online community board forums with entries dated December 6, 2006 and February 11, 2011 that were purportedly made by Opposer discussing goods and services offered under the WEAPONX mark cannot be taken as true. Additionally, screenshots of webpages with the domain name www.weaponxperformance.com that display the mark WEAPONX, on their face, do not prove that Opposer is the owner of the websites or that the mark displayed on the websites is being used by Opposer for the goods and services identified on the webpage. Similarly, a press release dated June 14, 2008 posted on the website www.pr.com which states, *inter alia*, "WeaponX Performance announced today that its revolutionary new spark plug is now available to consumers on its new Web site, www.weaponxperformance.com" is not evidence of the truth of the matters stated in the press release.

Even if, *arguendo*, we were to conclude that the Internet printouts demonstrate use of the pleaded WEAPONX mark, there is no evidence showing that Opposer's rights in that mark date back to any time before Applicant's priority date. Again, assertions appearing in the printouts submitted by Opposer under notice of reliance cannot be used to demonstrate its priority without testimony corroborating the truth

of this matter. *Safer*, 94 USPQ2d at 1040; *see also Couch/Braunsdorf Affinity, Inc.*, 110 USPQ2d at 1467 n.30.

In sum, Opposer has not proven it is the owner of the mark pleaded in the notice of opposition,[21] and, even if it did prove ownership, it has not demonstrated it has priority. Accordingly, Opposer cannot prevail on its claim of likelihood of confusion.

We add for completeness that a failure of proof also prevents Opposer from showing that there is a likelihood of confusion between Opposer's pleaded WEAPONX mark and Applicant's involved WEAPON X MOTORSPORTS mark. Opposer has not presented any evidence that it has sold any of its pleaded goods or rendered any of the pleaded services in its notice of opposition under its pleaded WEAPONX mark. We therefore cannot weigh the relationship of the parties' respective goods and services as well as other *du Pont* factors, i.e., similarities in trade channels and classes of purchasers, in order to determine if there is a likelihood of confusion. *See In re E. I. du Pont de Nemours and Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) (setting forth factors relevant to assessing a Section 2(d) claim). In view of the failure of Opposer to prove use (which in this case is the factual predicate for demonstrating the similarity of the parties' goods and services, channels of trade, and classes of purchasers), Opposer has failed to prove by a preponderance of the evidence there is

---

[21] Although it has been conceded that Opposer is the owner of a pending application for the mark WEAPONX, this fact is not evidence that Opposer actually has proprietary rights in or use of the WEAPONX mark. *Nike Inc. v. WNBA Enters. LLC*, 85 USPQ2d 1187, 1193 n.8 (TTAB 2007) (pending applications are evidence only that the applications were filed on a certain date; they are not evidence of use of the marks); *see also* Trademark Rule 2.122(b)(2), 37 C.F.R. § 2.122(b)(2) ("The allegation in an application for registration … of a date of use is not evidence on behalf of the applicant … ; a date of use of a mark must be established by competent evidence.").

a likelihood of confusion between its pleaded WEAPONX mark and Applicant's involved WEAPON X MOTORSPORTS mark.

## V. Abandonment

Section 45 of the Trademark Act, 15 U.S.C. § 1127, in pertinent part, defines "abandonment" of a mark as follows:

> When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

There are thus two elements to an abandonment claim: nonuse and an intent not to resume use. A plaintiff must show both of these elements unless it can show three years of nonuse, which prima facie establishes abandonment, in which case the burden shifts to the defendant to show either that it has used the mark, or that it has an intent to resume use. *See Cerveceria Centroamericana S.A. v. Cerveceria India Inc.,* 892 F.2d 1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989).

In support of its claim of abandonment, Opposer argues in its trial brief that Applicant has abandoned its involved WEAPON X MOTORSPORTS mark because Applicant has failed to introduce into evidence any information or documentation that demonstrates that Applicant was using its involved mark from 2001 to 2012.[22]

As noted above, Applicant need only rely on its application filing date, i.e., October 29, 2013, as its constructive use date in this proceeding. Accordingly, in view of our finding that Opposer has not established proprietary rights in its asserted mark prior

---

[22] Opposer's Trial Brief, p. 11-12, 16 TTABVUE 12-13.

to Applicant's filing date, the assertion that Applicant did not use its WEAPON X MOTORSPORTS mark prior to its constructive use date is irrelevant and is not a basis upon which to find abandonment. Opposer therefore has failed to prove by a preponderance of the evidence that Applicant has abandoned its involved WEAPON X MOTORSPORTS mark.

**Decision**: The opposition is dismissed as to both the claim of likelihood of confusion and the claim of abandonment.