This Opinion is a
Precedent of the TTAB

Mailed: May 8, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Tequila Cuadra S. de RL de CV*
*v.*
*Manufacturera de Botas Cuadra, S.A. de C.V.*

———

Opposition No. 91282327

———

Miguel Villarreal, Jr. and Brandon T. Cook of Gunn, Lee & Cave, P.C.,
    for Tequila Cuadra S. de RL de CV.

Angel Miguel Munoz of Munoz-Lopez & Associates PLLC,
    for Manufacturera de Botas Cuadra, S.A. de C.V.

———

Before Lykos, English, and Stanley,
    Administrative Trademark Judges.

Opinion by Stanley, Administrative Trademark Judge:

Manufacturera de Botas Cuadra, S.A. de C.V. ("Applicant") applied to register the standard-character mark CUADRA on the Principal Register for "alcoholic beverages, except beer; distilled spirits produced in Mexico in accordance with specific standards" in International Class 33.[1]

---

[1] Application Serial No. 88842187, filed March 20, 2020, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a bona fide intention to use the

Tequila Cuadra S. de RL de CV ("Opposer") filed a notice of opposition to registration of Applicant's mark based on: (1) Applicant's lack of a bona fide intent to use under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b); and (2) likelihood of confusion with Opposer's previously used mark CUADRA for alcoholic spirits, under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).[2]

In its answer, Applicant denied the salient allegations in the notice of opposition.[3]

The opposition has been fully briefed.

Having considered the evidentiary record, the pleadings, the parties' arguments, and applicable authorities, as explained below, we find that Opposer has carried its

---

mark in commerce. The application states "The English translation of 'CUADRA' in the mark is 'STABLE'."

[2] Notice of Opposition, 1 TTABVUE.

Citations to the appeal record are to TTABVUE, the Board's online docketing system. *See, e.g.*, *Turdin v. Trilobite, Ltd.*, Conc. No. 94002505, 2014 TTAB LEXIS 17, at *6 n.6 (TTAB 2014).

As part of an internal Board pilot program, this opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the pages on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this opinion cites to the LEXIS legal database and cites only precedential decisions, unless otherwise noted. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03(a)(2) (2024) for acceptable citation forms to TTAB cases.

[3] Answer, 4 TTABVUE. In its answer, Applicant also pled two "affirmative defenses," failure to state a claim and abandonment. *Id.* at 6. Failure to state a claim is not a true affirmative defense and will be given no consideration because it relates to an assertion of the insufficiency of the pleading rather than a statement of a defense to the merits of a claim. *See Hornblower & Weeks Inc. v. Hornblower & Weeks Inc.*, Opp. No. 91110043, 2001 TTAB LEXIS 562, at *18 n.7 (TTAB 2001). Applicant did not pursue its abandonment defense at trial or address it in its brief, thereby forfeiting or impliedly waiving the defense. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, Can. No. 92050879, 2013 TTAB LEXIS 347, at *5 n.6 (TTAB 2013), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014) (mem.); *Keystone Consol. Indus. v. Franklin Inv. Corp.*, Can. No. 92066927, 2024 TTAB LEXIS 290, at *5 n.10 (TTAB 2024) ("Affirmative defenses that were asserted in an answer but then not pursued at trial may be deemed impliedly waived, while affirmative defenses that were never asserted may be deemed forfeited.").

burden, and we sustain the opposition on the ground of Applicant's lack of a bona fide intent to use its mark in commerce as of the application filing date. Because we resolve this proceeding on Opposer's lack of bona fide intent claim, we need not and do not reach Opposer's likelihood of confusion claim. *See Yazhong Inv. Ltd. v. Multi-Media Tech Ventures, Ltd.*, Can. No. 92056548, 2018 TTAB LEXIS 168, at *44 (TTAB 2018).

## I. The Record

The record includes the pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the involved application. The parties also submitted:

### A. Opposer's Trial Period

1. Opposer's Notice of Reliance: Social media websites, third-party Internet evidence, screenshots from the Instituto Mexicano de la Propriedad Industrial ("IMPI") website and English translations of the same,[4] Applicant's discovery responses, and the prosecution files for two of Opposer's unpleaded trademark applications, Serial Nos. 98206325 and 98206323.[5]

2. Testimony Declaration with exhibits of Felipe de Jesus Navarro Alcala, Opposer's owner and officer ("Alcala Declaration").[6]

### B. Applicant's Trial Period

1. Applicant's Notice of Reliance: Trademark Status & Document Retrieval (TSDR) printouts for some of the parties' uninvolved applications and registrations.

---

[4] We take judicial notice of the USPTO page stating that the IMPI is the national Intellectual Property Office of Mexico. https://www.uspto.gov/learning-and-resources/pursuing-international-ip-protection/mexico. *See* TBMP § 704.12.

[5] Opposer's Notice of Reliance ("NOR"), 9 TTABVUE.

[6] Alcala Decl., 10 TTABVUE.

2.  Testimony Declaration with exhibits of Jorge Solis, General Manager of Vinedo SMA S.A. de C.V. ("Vinedo San Miguel"), a related company to Applicant ("Solis Declaration").[7]

3.  Testimony Declaration with exhibits of Rosalinda Flores-Rodriguez, Chief Financial Officer of Applicant ("Flores Declaration").[8]

## II. Evidentiary Objections

### A. Opposer's Evidentiary Objections

Opposer objects to certain Internet materials submitted with the Solis and Flores Declarations as inadmissible hearsay, namely Exhibit 1 to the Solis Declaration and Exhibits B, D, E, and F to the Flores Declaration.[9] Opposer also objects to Paragraph 15 of the Solis Declaration on the ground that "[n]o foundation has been laid for Mr. Solis to testify regarding the intentions of [Applicant]."[10]

Starting with the foundation objection, "[p]rocedural objections to testimony and evidence must be raised promptly to allow an opportunity to cure." *RLP Ventures, LLC v. Panini Am., Inc.,* Opp. No. 91268816, 2023 TTAB LEXIS 380, at *8 (TTAB 2023). Opposer's foundation objection is procedural, and because it was raised for the first time in Opposer's trial brief, it is forfeited. *See Moke Am. LLC v. Moke USA, LLC*, Opp. No. 91233014, 2020 TTAB LEXIS 18, at *16 (TTAB 2020) ("An objection to foundation raised for the first time in a trial brief is untimely because the

---

[7] Solis Decl., 12 TTABVUE.

[8] Flores Decl., 13 TTABVUE (public) and 14 TTABVUE (confidential). Certain exhibits to the Flores Declaration have been filed under seal pursuant to the Board's Standard Protective Order. Applicant refers to Ms. Flores-Rodriguez as Ms. Flores throughout its brief (18 TTABVUE), and we do the same in this opinion.

[9] Opposer's Br., 22-23.

[10] *Id.* at 23.

party offering the testimony (whether by deposition, affidavit or declaration) does not have the opportunity to cure the alleged defect.").

As to the hearsay objections, the witnesses have testified that the documents Opposer objects to are what they purport to be. More generally, an opposition proceeding is akin to a bench trial, and Board judges are capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding such testimony and evidence. We have considered the testimony and evidence introduced into the record. In doing so, we have kept in mind Opposer's objections and we have accorded whatever probative value the subject testimony and evidence merit. *See Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, Opp. No. 91190827, 2017 TTAB LEXIS 6, at \*4 (TTAB 2017); *U.S. Playing Card Co. v. Harbro, LLC*, Opp. No. 91162078, 2006 TTAB LEXIS 484, at \*9-10 (TTAB 2006); *see also Hangzhou Mengku Tech. Co. v. Shanghai Zhenglang Tech. Co.*, Opp. No. 91272143, 2024 TTAB LEXIS 575, at \*9 (TTAB 2024) ("Administrative Trademark Judges are not lay jurors who might easily be misled, confused, or prejudiced by irrelevant or unreliable evidence.").

### B. Applicant's Evidentiary Objections

#### 1. Alcala Declaration

Applicant objects to the Alcala Declaration in its entirety "on the grounds that the testimony fails to comply with Trademark Rule 2.20, 37 C.F.R. § 2.20, and 28 U.S.C.

§ 1746, as it was submitted without a specific date and lacks the name beneath the signature identifying the purported witness."[11]

The Alcala Declaration includes a statement that the declaration is being made by "Felipe de Jesús Navarro Alcalá," and it also includes an attestation consistent with 28 U.S.C. § 1746, namely, "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge." *See* Trademark Rule 2.20, 37 C.F.R. § 2.20 ("Instead of an oath, affidavit, or sworn statement, the language of 28 U.S.C. 1746 … may be used[.]"). Applicant does not contend that Mr. Alcala did not sign the declaration, and nothing in the record suggests that the signature on the Alcala Declaration is not in fact Mr. Alcala's signature. As such, Applicant's objection is formalistic and procedural, not substantive.

Because these procedural objections were raised for the first time in Applicant's trial brief, they are forfeited. *Cf. Syngenta Crop Protection Inc. v. Bio-Chek LLC*, Opp. No. 91175091, 2009 TTAB LEXIS 70, at *6-7 (TTAB 2009) (objection that testimony deposition transcripts were not signed waived by failing to timely raise objection – basis for objection could have been cured if objection was raised when the evidence was offered); *Of Counsel Inc. v. Strictly of Counsel Chartered*, Opp. No. 91081481, 1991 TTAB LEXIS 38, at *2 n.2 (TTAB 1991) (where opposer's testimony deposition was taken two days prior to the opening of opposer's testimony period, but applicant first raised an untimeliness objection in its brief on the case, objection waived, since

---

[11] Applicant's Br., 18 TTABVUE 28.

the premature taking of the deposition could have been corrected on seasonable objection); TBMP § 707.03(c)(1) (procedural objections that are waived unless raised promptly include "[o]bjections regarding the signing of testimonial deposition transcripts").

### 2.   Foreign-Language Documents

Applicant objects to the documents in Exhibits A-E and G to Opposer's Notice of Reliance on the grounds that certain portions of those documents (social media websites, third-party Internet screenshots, and files from the IMPI) are in a foreign language without an accompanying English translation.[12] Applicant also objects to Tabs 3, 4, 6, 7, 11, and 13 to the Alcala Declaration (described below) on the same ground.[13]

TBMP § 104 provides that "Board proceedings are conducted in English. If a party intends to rely upon any submissions that are in a language other than English, the party should also file a translation of the submissions. If a translation is not filed, the submissions may not be considered." Exhibit G to Opposer's Notice of Reliance and Tabs 3, 4, 6, 7, 11 and 13 to the Alcala Declaration are entirely in Spanish with no English translation, and accordingly have been given no consideration. *See Lacteos de Honduras S.A. v. Industrias Sula, S. De R.L. de C.V.*, Opp. No. 91243095, 2020 TTAB LEXIS 13, at *17 (TTAB 2020) ("[B]ecause the exhibits [to the counterclaim] are in Spanish and Applicant has not provided an English translation of the

---

[12] Applicant's Br., 18 TTABVUE 27.

[13] *Id.* at 28.

documents, they have not been considered."); *Swiss Watch Int'l Inc. v. Fed'n of the Swiss Watch Indus.*, Can. No. 92046786, 2012 TTAB LEXIS 3, at *5 n.8 (TTAB 2012) ("Some of the articles are in foreign languages; because respondent did not submit translations, they have no probative value.").

We come to a different result with respect to Exhibits A-E to Opposer's Notice of Reliance. These exhibits comprise social media pages and Internet website printouts, which include a mix of English and Spanish and pictures of the goods bearing Opposer's mark.[14] While the probative value may be somewhat lessened by the presence of some untranslated Spanish, we cannot say the social media pages and Internet evidence are unintelligible as a whole or lacking in probative value merely based on the presence of foreign wording.

In view thereof, Applicant's objections to Exhibits A-E to Opposer's Notice of Reliance are **overruled**, and Applicant's objections to Exhibit G to Opposer's Notice of Reliance and Tabs 3, 4, 6, 7, 11 and 13 to the Alcala Declaration are **sustained**.

## III. Entitlement to a Statutory Cause of Action

An opposer in an opposition proceeding before the Board must prove its entitlement to a statutory cause of action. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014). To establish entitlement to oppose, Opposer must demonstrate: (1) that its claim falls within the zone of interests protected by the statute (i.e., it has a "real interest" in the outcome of the proceeding); and (2) damage proximately caused by the proposed registration (i.e., a reasonable basis for its belief

---

[14] Opposer's NOR, 9 TTABVUE 7-78.

in damage). *See Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1070 (Fed. Cir. 2022) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 132 (2014)); *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303-07 (Fed. Cir. 2020); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373-74 (Fed. Cir. 2020); *Empresa,* 753 F.3d at 1275.

Mr. Alcala avers that: on March 26, 2021, Opposer exported CUADRA tequila to Rico Suave Tequila LLC, of Richmond, Virginia through its affiliated company Productos de Jalisco S. de R.L. de C.V.; Opposer has been exporting CUADRA tequila since that time; and the Tierra Group currently is Opposer's U.S. distributor for the CUADRA tequila.[15] In view of this uncontroverted testimony supporting its real interest and reasonable belief in damage from the registration of the identical CUADRA mark for the same goods, Opposer has established its entitlement to a statutory cause of action. *See Monster Energy Co. v. Lo*, Opp. No. 91225050, 2023 TTAB LEXIS 14, at *16 (TTAB 2023) (entitlement based on common law use of mark plausibly alleged to be confusingly similar). "[O]nce an opposer meets the requirements for [statutory entitlement], it can rely on any of the statutory grounds for opposition set forth in ... [the Trademark Act]." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1377 (Fed. Cir. 2012).

## IV. Lack of Bona Fide Intent to Use

Trademark Act Section 1(b) provides:

> A person who has a bona fide intention, under circumstances showing the good faith of such person, to use

---

[15] Alcala Decl. at ¶¶ 9-19, 10 TTABVUE 3-4.

a trademark in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director.

15 U.S.C. § 1051(b). "Because a bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under [Trademark Act] Section 1(b), the lack of such intent is a basis on which an opposer may challenge an applicant's mark." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1375 (Fed. Cir. 2015).

"A determination of whether an applicant has a bona fide intention to use the mark in commerce is an objective determination based on all the circumstances." *Boston Red Sox Baseball Club Ltd. P'ship v. Sherman*, Opp. No. 91172268, 2008 TTAB LEXIS 67, at *16 (TTAB 2008) (citing *Lane Ltd. v. Jackson Int'l Trading Co.*, Opp. No. 91092025, 1994 TTAB LEXIS 41, at *16 (TTAB 1994)). The central inquiry in a lack of bona fide intent to use claim is whether at the time of filing the application "the applicant's intent to use the mark was firm and not merely intent to reserve a right in a mark." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.,* 35 F.4th 1352, 1365 (Fed. Cir. 2022) (quoting *M.Z. Berger & Co.*, 787 F.3d at 1376) (internal quotation marks omitted).

"Opposer has the initial burden of demonstrating by a preponderance of the evidence that applicant lacked a bona fide intent to use the mark on the identified goods [on the filing date of its application]." *Boston Red Sox Baseball Club*, 2008 TTAB LEXIS 67, at *16. "The absence of any documentary evidence on the part of an applicant regarding such intent constitutes objective proof sufficient to prove

that the applicant lacks a bona fide intention to its use its mark in commerce." *Id.* (citing *Commodore Elecs. Ltd. v. CBM Kabushiki Kaisha*, Opp. No. 91086336, 1993 TTAB LEXIS 6, at *13 (TTAB 1993)); *see also Spirits Int'l, B.V. v. S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi*, Opp. No. 91163779, 2011 TTAB LEXIS 204, at *10 (TTAB 2011). If an opposer establishes a prima facie case, the burden shifts to the applicant to rebut that prima facie case by producing evidence which would establish that it had the requisite bona fide intent to use the mark when it filed its application. *See Saul Zaentz Co. v. Bumb*, Opp. No. 91156452, 2010 TTAB LEXIS 236, at *13 (TTAB 2010); *Boston Red Sox Baseball Club*, 2008 TTAB LEXIS 67, at *17; *Commodore Elecs.*, 1993 TTAB LEXIS 6, at *13 n.11.

The evidentiary bar for showing bona fide intent to use is not high, but more is required than "a mere subjective belief." *M.Z. Berger & Co.*, 787 F.3d at 1375. The objective evidence must indicate an intention to use the mark that is "firm" and "demonstrable." *Id.* at 1375-76. In other words, Applicant's evidence bearing on its bona fide intent must be "objective" in the sense that it consists of real-life facts and Applicant's actions, as opposed to Applicant's uncorroborated testimony as to its subjective state of mind. *See* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:14 (5th ed. Feb. 2025 update) ("Congress did not intend the issue to be resolved simply by an officer of the applicant later testifying, 'Yes, indeed, at the time we filed that application, I did truly intend to use the mark at some time in the future.'").

Here, Opposer argues that Applicant lacked a bona fide intent to use the involved mark in commerce for "alcoholic beverages, except beer; distilled spirits produced in Mexico in accordance with specific standards" when it filed the application because:

(1)     "Applicant has no documentary evidence to support its allegation of bona fide intent to use CUADRA in U.S. commerce with the Identified Goods at the time the application was filed on March 20, 2020";

(2)     "Applicant identified no communications, no invoices, no contracts, no labels, no formulas, no applications for regulatory approval, no purchase orders, no business plans, no meeting minutes, or any other document contemporaneous with the filing of the CUADRA Application to support a bona fide intent to use the CUADRA mark in U.S. commerce with the Identified Goods";

(3)     Applicant has not communicated with the Consejo Regulador del Tequila ("CRT"), the Mexican regulatory entity that controls the production of Tequila, or the United States Department of Treasury Alcohol and Tobacco Tax and Trade Bureau ("TTB"), and therefore has not yet begun seeking the required regulatory approval in Mexico or the United States;

(4)     the documents Applicant relies upon are "inadmissible hearsay, irrelevant to bona fide intent to use the CUADRA mark in U.S. commerce, and/or not contemporaneous with the filing of the CUADRA Application";

(5)    the bottles of tequila bearing Applicant's mark are merely props for promotional photoshoots for Applicant's footwear and clothing products;

(6)    the inclusion of alcoholic products in advertising for Applicant's footwear and clothing products does not evidence a bona fide intent to use Applicant's mark in connection with alcoholic beverages; and

(7)    the capacity of companies related to Applicant to produce alcoholic beverages outside the United States does not prove Applicant's bona fide intent to use its involved mark in the United States, especially when there are no communications between Applicant and any of its affiliated companies concerning the production of any CUADRA-branded alcoholic beverages for sale in the United States (or for that matter anywhere else).[16]

We find that Opposer has met its initial burden of a prima facie showing that, as of the filing date of Applicant's application, Applicant did not have a bona fide intent to use the CUADRA mark in commerce that may lawfully be regulated by Congress, 15 U.S.C. § 1127, (referred to as "United States commerce") for the goods identified in the application, namely, "alcoholic beverages, except beer; distilled spirits produced in Mexico in accordance with specific standards." Of particular significance are Applicant's responses to Opposer's interrogatories, wherein first, Applicant acknowledged that it has had no communications with the necessary regulatory authority in the United States concerning the production and sale of any CUADRA-

---

[16] Opposer's Br., 17 TTABVUE 12-19.

branded alcoholic beverage.[17] Second, Applicant conceded that the only documents it relies upon are "documents showing Applicant's ownership and/or control of the land, facilities, equipment and personnel necessary to produce and market the Identified Goods in U.S. commerce under the CUADRA mark," which relate to Applicant's foreign capacity (i.e., Applicant's ownership of various wineries outside the United States).[18] Third, in response to Opposer's document requests concerning Applicant's first use of Applicant's mark and Applicant's bona fide intent to use Applicant's mark in U.S. commerce, Applicant produced "no communications, no invoices, no contracts, no labels, no formulas, no applications for regulatory approval, no purchase orders, no business plans, [and] no meeting minutes."[19]

Because Opposer has made a prima facie showing that Applicant lacked a bona fide intent to use its mark in United States commerce, the burden shifts to Applicant to produce evidence that establishes that it had the requisite bona fide intent to use the mark when it filed its application. Applicant attempts to do so with testimony and documentary evidence. Ms. Flores testified, among other things, that:

- "As part of [Applicant's] marketing and promotional efforts and consistent with the expansion of Applicant's existing product line under the CUADRA

---

[17] Opposer's NOR, 9 TTABVUE 188-89 (Response to Opposer's Interrogatory No. 16). We also note that Applicant acknowledged that it has had no communications with the necessary regulatory authority in Mexico concerning the production and sale of tequila. *Id.* at 188 (Response to Opposer's Interrogatory No. 15).

[18] *Id.* at 181-82 (Response to Opposer's Interrogatory No. 4).

[19] Opposer's Br., 17 TTABVUE 12; *see also* Opposer's NOR, 9 TTABVUE 163-74 (Responses to Opposer's Document Request Nos. 2-6, 9, 13, 15-19).

mark [e.g., footwear and clothing] Applicant has produced and marketed alcoholic beverages since 2010 and continues doing so to date[.]"[20]

- "Another way Applicant markets its CUADRA mark in connection or close association with alcoholic beverages is through social media. Applicant has continuously promoted its CUADRA mark and CUADRA family of marks in association with alcoholic beverages[.]"[21]

- "Applicant has had the capacity to directly grow, produce, and distribute alcoholic beverages under the CUADRA mark since at least 2013, when it began acquiring various winegrowers as part of its group of affiliated and subsidiary businesses."[22]

- Both the Vinedo San Miguel and Hacienda San Bartolo wineries "are commonly owned and closely associated with Applicant and have always deliberately emphasized [their] affiliation with Applicant and [their] association with the CUADRA mark, on their website and other marketing material[,]" including for example, "Applicant's CUADRA retail store sits

---

[20] Flores Decl. at ¶ 13, 13 TTABVUE. There is no evidence that consumers would perceive alcoholic beverages as an "expansion" of footwear or clothing products, as opposed to an entirely distinct and unrelated product line.

[21] Flores Decl. at ¶ 14, *id.* There is no evidence that Applicant intends to offer alcoholic beverages in the United States apart from its clothing-related "marketing and promotional efforts." It is also not clear that goods "associated with" other goods for marketing purposes are goods in trade.

[22] Flores Decl. at ¶ 15, *id.* at 5.

within Vinedo San Miguel's premises [in Mexico], where visitors and consumers are exposed to the CUADRA mark."[23]

- "Applicant has experience in the alcohol industry and intends to utilize the land, equipment and personnel in its Mexico facilities to produce and sell CUADRA-branded alcoholic beverages."[24]

Mr. Solis's testimony and documentary evidence corroborate portions of Ms. Flores' testimony. Mr. Solis testified, among other things, that:

- Vinedo San Miguel is an affiliated company of Applicant as part of "the Cuadra Group," a group of entities and enterprises, including Applicant, owned by "the Cuadra family."[25]

- Vinedo San Miguel "grows, produces, and distributes alcoholic beverages worldwide."[26]

- Vinedo San Miguel "is the largest winegrower in the region with 52 hectares of agricultural land where it cultivates 118 thousand vines approximately."[27]

- Since at least 2013, Applicant, through Vinedo San Miguel, has had access to the land and equipment required to produce alcoholic beverages and the

---

[23] Flores Decl. at ¶ 18, *id.*

[24] Flores Decl. at ¶ 19, *id.*

[25] Solis Decl. at ¶ 5, 12 TTABVUE 2-3.

[26] Solis Decl. at ¶ 6, *id.* at 3.

[27] Solis Decl. at ¶ 10, *id.*

capacity, expertise, and infrastructure to manufacture and market alcoholic beverages.[28]

In addition to testimony, Applicant submitted documentary evidence that shows:

- Applicant created a promotional CUADRA-branded bottle of tequila.[29] An image of the bottle is provided below:



- Applicant created CUADRA-branded bottles of alcoholic beverages with labels dated between 2010 and 2019.[30] Images of the bottles are provided below:

---

[28] Solis Decl. at ¶¶ 12-14, *id.*

[29] Ex. C to Flores Decl., 13 TTABVUE 34.

[30] Ex. C to Flores Decl., *id.* at 38.



- CUADRA-branded bottles of alcoholic beverages have appeared in promotional materials for Applicant's footwear and clothing products.[31] An image from a representative advertisement is reproduced below:



---

[31] Ex. C to Flores Decl., *id.* at 39, 43, 44. The website from which the planned promotional materials were printed (https://www.behance.net/gallery/12139793/cuadra-boots-clothing-fw10-ad-campaign) was accessed on June 13, 2024, but the promotional materials themselves reflect a "published" date of November 14, 2013. *Id.*

- A CUADRA-branded bottle of an alcoholic beverage has been featured in a social media post for Vinedo San Miguel.[32] The social media post, which is dated in 2021, is reproduced below:



- The CUADRA mark has been featured in social media posts and Internet webpages for Vinedo San Miguel.[33] Representative social media posts, both from 2021, are depicted below:

---

[32] Ex. C to Flores Decl., *id.* at 51.

[33] Ex. D to Flores Decl., *id.* at 50, 52-66, 199-201.





We find that Applicant has not rebutted Opposer's prima facie showing. We begin by noting that, consistent with Opposer's contention, the CUADRA-branded bottles of alcoholic beverages that have appeared in advertisements and social media posts appear to be props for Applicant's advertisements for its clothing and footwear products. Applicant does not contend that it has taken steps (e.g., obtaining regulatory approval) that would allow Applicant to produce a CUADRA-branded alcoholic beverage for sale in the United States. We further note that the labels for the CUADRA-branded bottles of alcoholic beverages have Spanish-language text and do not appear to be targeted to U.S. consumers, even in the advertisements for unrelated products.[34]

Likewise, the social media posts of record do not support a bona fide intent to use the mark in United States commerce. The social media posts are all from Vinedo San Miguel's accounts (e.g., Facebook and Instagram), not Applicant's accounts; and the images appear to be from Vinedo San Miguel's store in Mexico. Nothing in the social media posts indicate Applicant's intent to specifically target U.S. alcoholic beverage consumers, and even if United States consumers engaged with these ads, that would not prove Applicant's intent to offer alcoholic beverages under the CUADRA mark in the United States on March 20, 2020 when the application was filed.[35]

---

[34] Even if Applicant had established that the CUADRA-branded alcoholic beverages were produced for sale in Mexico (as opposed to being props for an advertisement), that alone would not establish a bona fide intent to use in United States commerce. Otherwise, any foreign applicant could prove a bona fide intent to use in the United States by simply proving that it has offered the identified goods for sale in a foreign country.

[35] Although U.S. consumers may have had access to the social media posts by virtue of them being accessible online, there is no evidence in the record concerning what exposure, if any,

To overcome the lack of relevant documentary evidence, Applicant relies heavily on the principle that "an applicant's capacity to market and/or manufacture the identified goods is evidence that weighs against a finding that an applicant lacked bona fide intent to use."[36] *Swatch AG v. M. Z. Berger & Co.*, Opp. No. 91187092, 2013 TTAB LEXIS 515, at *45 (TTAB 2013), *aff'd*, 787 F.3d 1368 (Fed. Cir. 2015). Applicant, however, does not present any evidence of its own capacity to produce alcoholic beverages. Instead, it relies on the capacity of its commonly-owned winegrowers, none of whom are based in the United States and none of whom have been shown to have produced alcoholic beverages sold in the United States. Even considering the capacity of the commonly-owned winegrowers, such as Vinedo San Miguel, Applicant failed to produce any communications between it and those commonly-owned winegrowers discussing even a plan to produce a CUADRA-branded alcoholic beverage, let alone any documents or testimony demonstrating that concrete steps have been taken towards bringing such a product to the U.S. market (or any other market). Indeed, none of Applicant's trial witnesses testify that discussions between Applicant and its winegrowers for a CUADRA-branded alcoholic beverage have ever occurred.

Lastly, even if we credit all of Applicant's testimony and documentary evidence as supporting a bona fide intent to use the CUADRA mark in connection with alcoholic beverages generally (e.g., in Mexico), the record as a whole does not support a finding

---

U.S. consumers may have had to these social media posts. For example, how many of the "views," "likes" or "shares" were by U.S. consumers? The record is silent.

[36] Applicant's Br., 18 TTABVUE 21-25.

of a bona fide intent to use the mark in **United States** commerce. *M.Z. Berger*, 787 F.3d at 1377 ("[V]iewing the evidence as a whole, we find that substantial evidence supports the Board's conclusion."). Nothing in Applicant's testimony or documentary evidence ties any use or intended use of the CUADRA mark in association with alcoholic beverages to United States commerce. *Cf. id.* at 1378 (Board did not err in finding "no nexus between Berger's general capacity to produce watches and the capacity required to produce a 'smart' watch"). Applicant has not identified any communications, invoices, or contracts with its affiliated companies (or anyone else for that matter) that would establish a bona fide intent to use the CUADRA mark in connection with an alcoholic beverage to be offered in the United States. Applicant also has not identified any business plans or any internal or external business documents or communications (e.g., formulas, labels, purchase orders, meeting minutes, etc.) that even hint at an intention to sell a CUADRA-branded alcoholic beverage in the United States. Applicant fails to explain why no such evidence exists.

We have carefully considered all of the parties' arguments and evidence of record as a whole, even if not specifically discussed herein. Viewing all circumstances objectively, we conclude that Applicant's actions fail to show a bona fide intention to use the mark in a real and legitimate commercial sense on the identified goods in United States commerce at the time it filed the application. Therefore, we find that Opposer has established, by a preponderance of the evidence, that Applicant lacked a bona fide intent to use the mark CUADRA at the time it filed the application.

## V.    Decision

We sustain the opposition under Trademark Act Section 1(b). Because we have found for Opposer on its claim of lack of bona fide intent to use, we need not reach the merits of Opposer's likelihood of confusion claim.